Mr. Justice CATRON
 

 delivered the opinion of the court.
 

 Evariste Blanc, sued Terence Cousin, in the eighth District Court of Louisiana, invoking the aid of that court to settle a disputed boundary between the plaintiff and defendant.
 

 . Cousin, instead of responding to the action, for the purpose of settling boundary, filed an answer, denying Blanc’s
 
 title
 
 to the property described in his petition, and setting up title in himself, and claiming.damages against Blanc, who joined issue on the answer, and denied the validity of the title asserted by Cousin. This turned Cousin' into a plaintiff, (as the State, courts held,) and imposed on him the burden of proof to support his title. It was adjudged in the District Court, on the documents presented by Cousin, that he had no title whatever to any part of the land in dispute; and so the Supreme
 
 *207
 
 Court of Louisiana Reid on an appeal to that court, wRere tRe cause was reheard..( - •„
 

 'Pending
 
 tRe appeal, Blanc died, and Ris widow and Reirs were made parties. They prayed tRe benefit of tRe judgment of tRe court below,- and also tRat it might Re so amended Ry tRe Supreme Court as to give them tRe Renefit" of ail that Blanc claimed in Ris petition — that is to say, 222.80 acres, according to certificate Ro. 1,280, showing a regular purchase from the United States; togéthér with 1,240 arpens in super-ficies, according to a . plan annexed to the original petition of Blanc; that they might be quieted in the possession thereof as owners, and that the 1,240 arpens may Re Rounded according to the plan. And to this effect the court gave judgment.
 

 . The laws of Congress, and the acts of the officers executing them iñ perfecting titles to public, lands, Rave been drawn- in question, and construed Ry the decision of the Supreme Court of Louisiana in this-case; and the decision being against the title set up Ry Cousin,- under the acts of Congress and the authority exercised under them, it follows that jurisdiction is vested in this court, Ry the 25tR section of the judiciary, act, to examine the judgment of the State court; and, in dffing so, we -refer to the opinión of that court, which is made part of the ■Record by1 the laws of Louisiana,, and is explanatoiy to the judgment, of which it is there deemed an essential part. "We refer to the opinion, in order to show that questions did arise and were decided, as required, to give this court jurisdiction. (9 How., 9.) This is necessarily so in cases brought here Ry writ of error to the courts of Louisiana, because no Rill , of exceptions is necessary there, when appeals are prosecuted. The court of last- resort acts on the law and facts as presented Ry the whole record.
 

 By relying on this source of information, as to what questions were raised and were decided by the State court, we are relieved from all difficulty in this instance.
 

 Cousin’s claim is assumed to- have originated in a Spanish order of survey laid before the proper Commissioner appointed'under the act - of April 25, 1812, whose duty it was to receive - notices and evidences of claims, which were ordered to be recorded Ry the commissioner. It was made the duty of the commissioner to report to the Secretary of the Treasury upon claims, and the evidences thereof, thus notified to hinl; which report the 'act directed should Re laid Refere Congress Ry the Secretary.
 

 , ,
 
 In January, 1816, -the report was" transmitted by him to Congress. By the act of March 3d, 1819, Congress legislated in regard to the claims reported. By that act, two land
 
 *208
 
 districts were established east of the island of New-Orleans, "and a register and receiver were provided for each.
 

 The books of the former commissioners, in which the claims arid evidences of claims were recorded, were directed to be dodged with the register; and the register and receiver were vested with power “íó'-examine the claims Recognised, confirmed, or provided to be- granted,”-.by the provisions of that act; they were.! instructed to make' out, for each .claimant entitled, in, their opinion' thereto, a certificate according to the nature of the case, pursuant to the instructions of the Commissioner of the-General Land Office; and, on the presentation at that office of such certificate, a patent was ordered to be issued. Francis Cousin’s claim was within the above description.
 

 As no provision was made by the act of 1819, vesting ■ authority in the register and receiver to direct in what manner confirmed claims should be located and surveyed, it was (sec. 11) left to the deputiés of the principal surveyor south of Tennessee, to find the lands, and survey them according to their •own judgment. Then, again,.the surveyors had no authority to adjust conflicting boundaries, and -therefore further legislation was deemed necessary; and-accordingly the .act of June 8, 1822, was passed by Congress,' giving the registers and receivers power to direct the manner in which claims should be located and surveyed, (sec., 4;) and power was also given to them to decide between parties whose claims conflicted-.
 

 •In June,. 1820, the register and receiver gave Cousin a certificate of confirmation under the. act of 1819. They certify “that claim No. 255 in the report of the' commissioner, marked B, claimed by Francis Cousin, originahclaimant Stephen Réné, is confirmed as .a donation, and entitled- to a patent for* one thousand arpens, situated in St. Tammany, and claimed under an order of survey' dated 10th September, 1798.”
 

 • No Spanish survey was found, to aid the foregoing description.
 

 • In.1826, the register and receiver made an order of survey,. as follows: •
 

 “Land Office, St. Helmet.
 

 . “Francis Cousin, Certificate No. 178, Dated June 8th, 1820.
 

 “Francis Cousin claims a tract of one .thousand arpens of land,1 situate in the parish of St. Tammany, as purchaser from his father, Francis Cousin, deceased, who bought it from Louis Blanc, who bought it from the original owner, Gabriel Bertrand, and in virtue of certificate No. 178, dated 8th June, 1820, and signed Charles-S. Cosby, register, and Fulwer Skip-with, receiver, in. which certificate it is alleged by-this claimant that it is erroneously set forth that Stephen Réné was the original claimant; it appearing that this tract'of land is front-:
 
 *209
 
 ing on Bayou la Liberté, bounded below by tbe tract of land of Mr. Girod, and above by a tract of land belonging to -claimant.
 

 “It is ordered that this claim be located and surveyed with a front extending on said bayou, from the land of said Girod to that of claimant above, and from these points on the bayou to run back for quantity.”
 

 The Supreme Court of Louisiana held the certificate of 1820 so. vague as not to be of any value, and pronounced it void. Furthermore, that the second one of 1826 departed from -the confirmation, and was also invalid. The first purported to be for land derived from Stephen Réné, as original claimant; and the second, for land of which Gabriel Bertrand was the original owner.
 

 The act. of 1822 is a supplement to the act of 1819; when taken together, they gave'the register and receiver authority to' declare what land had been confirmed, and how it should be surveyed. How, if it be true, as is held by the State court, that the certificate of 1820 is so vague as to be of no value and void, then it follows, that another could be made in 1826 which would, be certain in its description of the land confirmed, accompanied by an order of survey. Whether Réné or Bertrand once claimed the land, is immaterial.' The confirmation is an incipient United States title, conferred on Oousin, which our Government, in its political capacity, reserved to itself the power to locate by survey, and to grant by the acts of its executive officers; with which acts the courts of justice have no jurisdiction to interfere. , (16 How., 403, 414.)
 

 It rested with the register and receiver to ascertain the loca-tioh of the land confirmed to Cousin, from the evidences of claim, recorded and filed with the' register; and having decided where and how the land should be located and surveyed, the courts of justice cannot reverse that decision; thé power, of revision is vested in the Commissioner,of the General . Land Office.
 

 It is .proper here to say, we do not hold that the certificate of 1820 was void, because it was too vague to authorize a survey of the land. It established the
 
 fact
 
 that Cousin’s claim was-one of those described in the act of 1819, which had been confirmed. The act ,óf 1822, was remedial; its main object was to confer power on ,the register, and receiver to amend vague descriptions; so vague that patents could not issued on them, as required by the act of11819.
 

 The, amendment was effectually made in this instance by the order of survey of 1826; and, when the survey was executed according to that order, the United States Government
 
 *210
 
 was bound by it until it was set aside at tbe General - Land Office.
 

 Tbe act of March 8, 1831, authorized a surveyor general to be appointed for the State of Louisiana, whose duty it was to cause confirmed claims to be surveyed; and the registers and receivers were again empowered (sec. 6) to decide in cases of contested boundaries, and consequently to control the surveys. On the 22d of December, 1846, the official survey (accompanied by a plat) of the claim of Francis Cousin, was approved at the surveyor general’s office. This is known as Yanzandt’s survey, and is the one relied on by Cousin in his defence. A copy thereof, duly certified as a, record of the surveyor general’s office, is found in.the record; and which copy the act of 1831 (sec. 5) declares- shall be. admitted as evidence in the courts of justice.
 

 The act of 1831 (sec. 6) further 'declares (as respects interfering claims) “that the decisions of the register and receiver, and the surveys and patents that may be issued in conformity, thereto, shall not in anywise be - considered as precluding a legal investigation and decision by the proper -judicial tribunals between' the parties to any such interfering claims, but shall only operate as a relinquishment on the part of the United States of all title to the land in question.” The foregoing reservation applies here; Cousin’s survey extended in depth, from Bayou Liberté, so as to include 222.80 acres of land, which had been purchased of the United States by Francis Alpuente, and on the 4th of March, 1844, (before Cousin’s'survey was ■made,) duly conveyed to the. plaintiff, Blanc, as part of the ‘succession of Alpuente.
 

 Title to this land is claimed by Cousifi by force Of his con/■-firmation, rendered certain by his survey of 1846; and which 'claim was rejected by the Supreme Court of Louisiana, when ‘-they rejected Cousin’s title as set up. . •
 

 we are of opinion that Cousin’s title had no standing in a ‘court of justice until the land was surveyed, and the survey ■approved as a proper one at the surveyor general’s office; and that therefore the United States could lawfully sell the land, and give title to Alpuente. (8 How., 306.) The mere loose
 
 ■order
 
 of survey, niade in 1826, by the register and receiver, cannot be recognised in this case as conferring any vested interest, as against Alpuente, to the 222.80 acres purchased by him- and to this extent the decision of the Supreme Court of . Louisiana is proper. But as respects all other parts of Cousin’s survey, it furnishes
 
 •prima facie,
 
 evidence of title'in him, sub--' jectto'be contested by the .opposing title of Blanc, if he has -any by prescription or otherwise; ' ,
 

 
 *211
 
 ' "We order that the judgment be reversed, and the cause remanded to the Supreme Court of Louisiana, to he further proceeded in.