## No. 8965.

### THE NEW ORLEANS WATERWORKS COMPANY VS. THE LOUISIANA SUGAR REFINERY COMPANY AND THE CITY OF NEW ORLEANS.

The City of New Orleans has the right to grant the privilege of laying pipes and conduits, across and through the river bank and the public streets, to parties asking the same, to draw water from the river for their own use and purposes.

The right thus conceded does not come in conflict with those of the Waterworks Company, and can, therefore, be legally exercised under the terms of the privilege, and during the pleasure of the municipal authorities.

APPEAL from the Civil District Court for the Parish of Orleans. *Lazarus, J.*

---

*Albert Voorhies* and *T. J. Semmes & Payne* for Plaintiff and Appellant:

The legislative Charter, as well as the transfer from the City of New Orleans to plaintiff, confers upon it the exclusive right to supply the City and her inhabitants with water from the river through pipes and conduits.

None but contiguous or riparian proprietors can claim the benefit of Sec. 18 of Act No. 33 of 1877.

The City of New Orleans is, by her transfer to the New Orleans Waterworks Company, bound to warrant this Company in the use and enjoyment of the above exclusive right. C. C. 2475 (2450), 2476 (2451), 2560 (2476 )

*A. Goldthwaite* for Defendant and Appellee.

---

The opinion of the Court was delivered by

BERMUDEZ, C. J. The object of this suit is to annul the permission which the City of New Orleans has granted the defendant Company, to lay water pipes from its factory to the Mississippi river, under municipal direction and control, the permission being revocable at the pleasure of the council. The petition is accompanied by a prayer for an injunction to prevent the Company from using said permission and to command the City to revoke the same. It concludes with a demand for ten thousand dollars damages *in solido* from the Company and the City.

The defense is, that the Company, in common with all other inhabitants, has an inalienable right to draw water from the river for their own use and supply; that the defendant has obtained the valid authority of the City to lay pipes and conduits from the river to within its premises, to accomplish that purpose; that the plaintiff corporation has and enjoys the privilege of drawing water from the same river, by means of pipes and conduits, for the sole purpose of supplying with water the City and its inhabitants; that the defendant Company has not supplied, and does not intend to supply, the City or any inhabitant of the City of New Orleans, with water through its pipes, which are exclusively for its own use and for its manufacturing purposes.

There are other defences, which it is needless to set forth.

From an adverse judgment, the plaintiff corporation appeals.

The facts are few and indisputable.

In 1833, the legislature chartered the Commercial Bank of New Orleans, conferring upon it the right to have *forever* the *exclusive privilege* of supplying the City and its inhabitants with water from the Mississippi river, by means of pipes and conduits, and imposing upon the exercise of that right, certain onerous conditions which it is unnecessary to mention.

In 1868, under the terms of the charter, the franchise and the property of the bank passed for a valuable consideration to the City of New Orleans; who carried on the works until 1877, when the plaintiff corporation being chartered, the City transferred to it all her rights to the franchise and property acquired, as stated.

Section 5 of Act 13 of 1877, p. 51, chartering the plaintiff corporation, provides that it shall have for *fifty* years the exclusive privilege of supplying the City of New Orleans and its inhabitants with water from the Mississippi river, or any other stream or river, by means of pipes and conduits, and, to that end, to put up such constructions and do such work as may be necessary "through, or over any of the lands or streets of the City of New Orleans."

Section 18 of the Charter formally recognizes the right of the city council of granting to persons contiguous to the river, the privilege of laying pipes to the river for their exclusive use.

The Charter confers rights and imposes obligations which it is not imperative to specify.

In March, 1883, the city council authorized the defendant Company to erect its factory and to lay water and sewerage pipes therefrom to the river, according to lines and grades to be furnished by the surveyor, under certain restrictions, one of which being that the permission shall remain *revocable* at the pleasure of the council.

The question which arises, under such state of facts is, simply : Whether the City of New Orleans had the right to grant the authority. If the City had such a right, the defendant Company has a right to exercise it.

In order to determine that question, it is essential, first, to ascertain what is the nature and extent of the privilege originally conferred by the State upon the Commercial Bank and which passed to the City of New Orleans, by whom it was afterwards transferred to the defendant Company, organized, as it was, by a charter which is explicit as to its prerogatives and responsibilities.

The preamble of the Act of 1833, which creates and charters the

Commercial Bank, declares that its object is to be the conveying of water from the river into the City of New Orleans and its faubourgs, and into the houses of its inhabitants ; and Section 4 confers to it *forever* the *exclusive* privilege of supplying the City, its inhabitants and faubourgs, with water from the Mississippi river, by means of pipes or conduits or hydrants. Those expressions are almost identical with those found in the Act of 1877, with the exception that the duration of the privilege, instead of being *perpetual*, is limited to the term of fifty years.

The right conferred by the legislature in 1833, and confirmed in 1877, was not to draw water from the river, nor was it to lay pipes and conduits on the lands and streets of the City of New Orleans. It was the *exclusive* privilege of supplying the City and its inhabitants with water drawn from the river by those means, the object in view being, on account of benefits derived by the City, the *exclusion* of all others, corporations and individuals, from making a similar supply, in other words, from selling and vending water.

The Commercial Bank, in common with all the inhabitants of the City, possessed, independent of any legislative grant or concession, the right to draw water from the river for its own purposes, and to supply the City and its inhabitants with it ; but it did not, any more than any of the inhabitants of the City, have the right of laying the pipes and conduits necessary to convey the water through or over any of the lands or streets of the City, and to do so it required special authority, either directly from the State, or from its functionary, the City herself. The right which it did not possess and which no other inhabitant possessed, was the exclusive privilege of supplying the City and its inhabitants forever, or a limited time, by means of pipes and conduits laid through the public soil.

The moment that privilege was conferred by the State on the corporation, to supply the City and its inhabitants with water from the river, through pipes and conduits which it was authorized to lay through and over any of the lands or streets of the City, all preexisting, as well as all subsequently arising rights, which could have otherwise been exercised, ceased to be available, and competition for such supply became an absolute legal impossibility.

. The rights to that exclusive privilege, under the present Constitution, is contested by the defendant ; but it is entirely out of place to consider whether it exists or not, as, under the pleadings and the facts, the question of competition is not at all at issue.

The City of New Orleans does not claim to have conferred on the

defendant Company, and that Company does not claim to have received from the City, the right or privilege of supplying the City and its inhabitants with water by means of pipes, conduits and hydrants.

The City and the defendant Company claim only, that the former had a right to grant, and the latter has that to enjoy, the permission of laying pipes and conduits from the river to its factory, for the sole purpose of supplying itself with river water for its own purposes, and for no other.

It cannot be doubted for an instant that, as the City has, under general laws and by her charter, which emanates directly from the sovereign, the exclusive control and regulation of her public lands, quays, streets and avenues, she had the right of permitting the defendant Company to lay pipes and conduits across the quay and through the streets, from the river to within its factory limits, for the purpose of supplying itself with the water needed for its objects. R. C. C. 450, 453, 455, 457 ; 14 An. 854 ; 32 An. 915.

It is true, that Section 18 of the Charter of 1877 expressly protects riparian or contiguous proprietors against a possible effect of the *exclusive* privilege granted; but the provision there found is not to be construed as one conferring a privilege or right which otherwise would have had no existence. It is indisputable, that such riparian or contiguous owners would, independent of the declarations in Section 18, have enjoyed that right, which could, under no contingency, have thus been abridged.

They had, clearly, not only the privilege, in common with all others, to draw the running water from the river for domestic purposes, *ad lavandum et potendum*, but also, on principle, that, without the need of a previous permission, of laying pipes from the river to their premises, to draw the water necessary for their use. The State and her functionaries—political corporations—however, have the right, in the exercise of the police power, of regulating the enjoyment of that right, denying or permitting it, according as public security and good may or not demand.

If Section 18 was designed for any practical object, it could only have been to secure the contiguous owners, beyond the possibility of a doubt, their indisputable rights, subjecting them, however, to the control of the municipal authorities, as the improvident or careless exercise of such rights, across the river bank and through the public street of a populous metropolis, might be attended with great calamitous consequences, inflicting incalculable wrong and injury.

The right of the plaintiff to the City's warranty, as transferror of the franchise and property of the former Commercial Bank, is no founda-

tion for this action. If the plaintiff has the exclusive privilege in question, nothing shows that the City has done or does, or proposes doing, anything designed to impair the right which the plaintiff has to supply, with river water, the City and its inhabitants.

Lord Chief Justice Wilmot, (op. and judg., p. 578) has well observed:

"It is the duty of all courts of justice to keep their eye steadily upon the interests of the public, even in the interest of commutative justice, and when they find an action is founded on a claim injurious to the public and which has a bad tendency, to give it no countenance or assistance in *foro civile.*"

Well aware of, and in keeping with that wise rule of public security, we think it our duty to reject, as the lower court did, the demand of plaintiff.

Judgment affirmed with costs.