## NEW ORLEANS WATERWORKS COMPANY *v.* LOUISIANA SUGAR REFINING COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

No. 38. Argued October 26, 27, 1887. — Decided March 19, 1888.

The opinion of the Supreme Court of Louisiana is strictly part of the record, and is so considered on writ of error from this court.

The provision of the Constitution of the United States, which declares that no State shall pass any law impairing the obligation of contracts, is aimed at the legislative power of the State, and not at decisions of its courts, or acts of executive or administrative boards or officers, or doings of corporations or individuals.

This court has no jurisdiction of a writ of error to the highest court of a State, on the ground that the obligation of a contract has been impaired, unless some legislative act of the State is upheld by the judgment sought to be reviewed; and when the state court gives no effect to a law of the State subsequent to the contract, but holds, upon grounds independent of that law, that the right claimed was not conferred by the contract, the writ of error must be dismissed for want of jurisdiction.

The legislature of Louisiana in 1877 having granted to a corporation the exclusive right of constructing waterworks to supply the city of New Orleans and its inhabitants with water, provided that nothing in this charter should prevent the city council from granting to any person, contiguous to the Mississippi River, permission to lay water pipes exclusively for its own use, an ordinance of the city council in 1883, granting such permission to a corporation whose property is separated from the river by a street and a broad quay or levee owned by the city, is but a license from the city council exercising an administrative power, and not a law of the State; and if the highest court of the State, in a suit between the waterworks company and the licensee, gives judgment for the latter, upon the construction and effect of the charter and the license, and not because of the provision of the state constitution of 1879 abolishing monopolies, this court has no jurisdiction on writ of error, although the question whether the licensee's property was contiguous to the river was in controversy.

THIS was a petition, filed March 30, 1883, in the Civil District Court for the Parish of New Orleans, by the New Orleans Waterworks Company against the Louisiana Sugar Refining Company and the City of New Orleans, to restrain the laying of water pipes from the factory of the Louisiana Sugar Refining Company through the streets and thorough-

fares of the city to the Mississippi River. The allegations of the petition are in substance as follows:

That the legislature of Louisiana, by an act of April 1, 1833, chartering the Commercial Bank of New Orleans, declared the chief object of that corporation to be "the conveying of water from the river into the city of New Orleans and its faubourgs, and into the houses of its inhabitants;" and enacted that it should "have forever the exclusive privilege, from and after the passing of this act, of supplying the city and inhabitants of New Orleans and its faubourgs with water from the river Mississippi, by means of pipes or conduits," and the right to construct the necessary works for that purpose; and provided that its works, rights and privileges might be purchased by the city of New Orleans at any time after thirty-five years from the passage of the act.

That in 1869 the city of New Orleans purchased the same accordingly, and took charge of and used the works for the purpose of supplying the city and its inhabitants with water.

That the act of the legislature of Louisiana of March 31, 1877, incorporating the plaintiff, contained the following provisions:

Sec. 2. "That immediately after the organization of the said Waterworks Company, as hereinafter provided, it shall be required to issue to the city of New Orleans stock to the amount of six hundred and six thousand six hundred dollars, as full-paid, and not subject to assessment; and in addition thereto, one similar share for every one hundred dollars of waterworks bonds which said city may have taken up heretofore and extinguished by payment, exchange or otherwise; and that the residue of said capital stock shall be reserved for the benefit of all holders of waterworks bonds, to the extent of the amount now outstanding, who may elect to avail themselves of the provisions of this act."

Sec. 5. "That the said Waterworks Company shall own and possess the privileges acquired by the city of New Orleans from the Commercial Bank; that it shall have for fifty years from the passage of this act the exclusive privilege of supplying the city of New Orleans and its inhabitants with water

from the Mississippi River, or any other stream or river, by means of pipes and conduits, and for erecting or constructing any necessary works or engines or machines for that purpose;" and have authority "to lay and place any number of conduits or pipes or aqueducts, and to cleanse and repair the same, through or over any of the lands or streets of the city of New Orleans; provided the same shall not be an obstruction to commerce or free circulation."

SEC. 11. "That the city of New Orleans shall be allowed to use water from the pipes and plugs of said company now laid, or hereafter to be laid, free of any charge, for the extinguishment of fires, cleansing of the streets, and for the use of all public buildings, public markets and charitable institutions."

SEC. 17. That "at the expiration of fifty years from the organization of the company, the city shall have the right to buy the works, conduits, pipes, etc., of the company, at a valuation to be fixed by five experts;" "but should the city neglect or refuse to purchase said works, etc., as above provided, the charter of the company shall be *ipso facto* extended for fifty years longer, but without any exclusive privilege or right to supply water, according to the provisions of the charter."

SEC. 18. "That nothing in this act shall be so construed as to prevent the city council from granting to any person or persons, contiguous to the river, the privilege of laying pipes to the river, exclusively for his own or their own use."

That on April 9, 1878, the city transferred the waterworks and franchises aforesaid to the plaintiff.

That "since said transfer the petitioner has faithfully discharged the trust imposed on it, and complied with all its obligations; that, by virtue of the aforesaid exclusive privilege thus conferred upon it by the aforesaid charters, statutes and acts of transfer, the city of New Orleans cannot grant to any one the privilege of laying pipes to the river to convey water within her limits, without a flagrant violation of the aforesaid contracts and a breach of warranty, with the exception, however, of such privilege or facility as said city may think it expedient to extend to riparian owners of property lying contiguous to said river."

That the city of New Orleans granted permission to the Louisiana Sugar Refining Company, a corporation domiciled in the parish of Orleans, to lay pipes from its factory to the Mississippi River, as appeared by the following ordinance, adopted by the city council on March 13, and approved by the mayor on March 15, 1883:

"An ordinance providing for the erection of all necessary machinery, boilers and engines, and laying of water and sewerage pipes in connection with the Louisiana Sugar Refining Company's works.

"Be it ordained that permission be, and is hereby, granted to the Louisiana Sugar Refining Company to erect all necessary machinery, boilers and engines in their factory in course of construction in the square bounded by Front, Clay, Bienville and Custom-House Streets, and to lay water and sewerage pipes from said factory to the Mississippi River, according to lines and grades for same to be furnished by the city surveyor: Provided, that all excavations and street crossings, paving, etc., broken up shall be replaced, repaired and relaid to the entire satisfaction of the commissioner of public works; revocable at the pleasure of the council."

That "under said permission the said Louisiana Sugar Refining Company has broken the grounds along and across the streets and thoroughfares of the said city in the direction of the said river from its aforesaid factory, and will, unless restrained by the equitable writ of injunction, complete said works, pipes and conduits, and proceed to draw therewith water from the Mississippi River, in violation of the exclusive privileges aforesaid of the petitioner, and to its great damage and injury;" and "that said Louisiana Sugar Refining Company has no riparian rights in the premises, and its property is not contiguous to said river."

The answer of the city of New Orleans denies all the allegations of the petition.

The answer of the Louisiana Sugar Refining Company also denies all those allegations, except that it admits that by the ordinance aforesaid "the city of New Orleans granted to it license and permission to lay water and sewerage pipes from

its factory to the Mississippi River; and that it has availed itself of the license therein granted, strictly in accordance with the ordinance aforesaid;" and "admits that it is the owner of certain property within the square bounded by Front, Clay, Bienville, and Custom-House Streets, in the city of New Orleans; and avers that said property is what is known as batture property, and that the rights, ways and privileges of the city of New Orleans were transferred by the title given by the said city of New Orleans to its vendors;" and "avers that said property fronts on a public street and the quay, a public place, and that it is contiguous and adjacent to the Mississippi River, and that the respondent has riparian rights to draw water therefrom for its own use and manufacturing purposes, and to convey and discharge its water therein;" "denies that the plaintiff corporation has any exclusive privilege and right to draw water from the Mississippi River by conduits and pipes, or otherwise, which could or would impair the use by this respondent and every other person of the said water for its own and their supply;" avers "that, if there be any such pretended exclusive privilege and right, it is null and void, as in derogation of common right and of law;" "denies that it has supplied, or is now supplying, or intends hereafter to supply, the city of New Orleans or any of its inhabitants with water, or to carry off and discharge any waste except its own; and expressly avers that the pipes laid are for its own exclusive use, and that it draws water from said river only for its own use and manufacturing purposes connected with its said factory;" and further avers "that the exclusive rights and privileges claimed by the plaintiff under its charter would constitute a monopoly, and are therefore null and void."

Upon a trial by jury, it appeared that the material provisions of the aforesaid statutes of Louisiana were as above set forth; and the evidence supported all the allegations of fact in the petition, except that the acts of the Louisiana Sugar Refining Company, and the situation of its factory in relation to the river, were proved to be as follows: The company was constructing a factory on its land, bounded by Front, Clay, Bienville and Custom-House Streets, and had begun to lay water

and sewerage pipes, exclusively for the use of its factory, and according to lines and grades furnished by the city surveyor, from its factory straight to the river, across Front Street, and thence across a broad quay or levee, owned by the city, and open to the public, except that some large sugar sheds occupied by lessees of the city stood upon it, and that the tracks of the Louisville, Nashville and Mobile Railroad were laid across it.

The plaintiff asked the court to instruct the jury: "1st. That the word 'contiguous,' as used in § 18 of the charter of the plaintiff company, means riparian, or on the edge of the river. 2d. That the city of New Orleans has no right to grant permission to any person or corporation whose property is not contiguous to the river to lay pipes or conduits to the Mississippi River to draw water therefrom through said pipes or conduits for manufacturing or other purposes." The court refused to give either of said instructions, " on the ground that the jury were judges both of the law and the facts of the case," and allowed a bill of exceptions. The jury returned a verdict for the defendants, and the court, with the verdict and the evidence before it, gave judgment for the defendants, dismissing the suit.

The plaintiff appealed to the Supreme Court of Louisiana, which affirmed the judgment; and in its opinion recapitulated the substance of the provisions of the statutes of Louisiana, above quoted, the conveyances from the Commercial Bank to the city of New Orleans in 1868 and from the city to the plaintiff in 1877, and the ordinance, passed by the city council in 1883, granting to the Louisiana Sugar Refining Company permission to lay pipes from its factory to the Mississippi River, and stated the question to be decided and the grounds of its decision as follows:

"The question which arises, under such state of facts, is simply, Whether the city of New Orleans had the right to grant the authority. If the city had such a right, the defendant company has a right to exercise it.

"In order to determine that question, it is essential, first, to ascertain what is the nature and extent of the privilege origi-

nally conferred by the State upon the Commercial Bank, and which passed to the city of New Orleans, by whom it was afterwards transferred to the defendant [plaintiff] company, organized, as it was, by a charter which is explicit as to its prerogatives and responsibilities."

"The right conferred by the legislature in 1833, and confirmed in 1877, was not to draw water from the river, nor was it to lay pipes and conduits on the lands and streets of the city of New Orleans. It was the *exclusive* privilege of supplying the city and its inhabitants with water drawn from the river by those means, the object in view being, on account of benefits derived by the city, the *exclusion* of all others, corporations and individuals, from making a similar supply, in other words, from selling and vending water.

"The Commercial Bank, in common with all the inhabitants of the city, possessed, independent of any legislative grant or concession, the right to draw water from the river for its own purposes, and to supply the city and its inhabitants with it; but it did not, any more than any of the inhabitants of the city, have the right of laying the pipes and conduits necessary to convey the water through or over any of the lands or streets of the city, and to do so it required special authority, either directly from the State, or from its functionary, the city herself. The right which it did not possess, and which no other inhabitant possessed, was the exclusive privilege of supplying the city and its inhabitants for ever, or a limited time, by means of pipes and conduits laid through the public soil.

"The moment that privilege was conferred by the State on the corporation, to supply the city and its inhabitants with water from the river, through pipes and conduits which it was authorized to lay through and over any of the lands or streets of the city, all preexisting, as well as all subsequently arising rights, which could have otherwise been exercised, ceased to be available, and competition for such supply became an absolute legal impossibility.

"The right to that exclusive privilege, under the present constitution, is contested by the defendant; but it is entirely out of place to consider whether it exists or not, as, under the

pleadings and the facts, the question of competition is not at all at issue.

" The city of New Orleans does not claim to have conferred on the defendant company, and that company does not claim to have received from the city, the right or privilege of supplying the city and its inhabitants with water by means of pipes, conduits and hydrants.

" The city and the defendant company claim only that the former had a right to grant, and the latter has that to enjoy, the permission of laying pipes and conduits from the river to its factory, for the sole purpose of supplying itself with water for its own purposes, and for no other.

"It cannot be doubted for an instant that, as the city has, under general laws and by her charter, which emanates directly from the sovereign, the exclusive control and regulation of her public lands, quays, streets and avenues, she had the right of permitting the defendant company to lay pipes and conduits across the quay and through the streets, from the river to within its factory limits, for the purpose of supplying itself with the water needed for its objects.   Rev. Civil Code, arts. 450, 453, 455, 457; *Brown* v. *Duplessis*, 14 La. Ann. 854; *Board of Liquidation* v. *New Orleans*, 32 La. Ann. 915.

" It is true, that section 18 of the charter of 1877 expressly protects riparian or contiguous proprietors against a possible effect of the *exclusive* privilege granted; but the provision there found is not to be construed as one conferring a privilege or right which otherwise would have had no existence. It is indisputable, that such riparian or contiguous owners would, independently of the declarations in section 18, have enjoyed that right, which could, under no contingency, have thus been abridged.

" They had clearly, not only the privilege, in common with all others, to draw the running water from the river for domestic purposes, *ad lavandum et potendum,* but also, on principle, that, without the need of a previous permission, of laying pipes from the river to their premises, to draw the water necessary for their use.   The State and her functionaries — political corporations — however have the right, in the exer-

cise of the police power, of regulating the enjoyment of that right, denying or permitting it, according as public security and good may or may not demand.

" If section 18 was designed for any practical object, it could only have been to secure to the contiguous owners, beyond the possibility of a doubt, their indisputable rights, subjecting them, however, to the control of the municipal authorities, as the improvident or careless exercise of such rights across the river bank and through the public street of a populous metropolis might be attended with great calamitous consequences, inflicting incalculable wrong and injury." 35 La. Ann. 1111.

A writ of error from this court was allowed by the Chief Justice of the Supreme Court of Louisiana, upon the plaintiff's petition representing " that said plaintiff set up to its charter as a contract between it and said city of New Orleans and the State of Louisiana; and that the ordinance of said city in favor of said defendant, the Louisiana Sugar Refining Company, was a violation of said contract, which was protected by the Constitution of the United States; and said Supreme Court in its decree maintained the legality of said ordinance, and decreed it to be no violation of said contract."

*Mr. J. R. Beckwith* for plaintiff in error.

*Mr. S. Teakle Wallis* for defendant in error.

MR. JUSTICE GRAY, after stating the case as above reported, delivered the opinion of the court.

The plaintiff in its original petition relied on a charter from the legislature of Louisiana, which granted to it the exclusive privilege of supplying the city of New Orleans and its inhabitants with water from the Mississippi River, but provided that the city council should not be thereby prevented from granting to any person " contiguous to the river" the privilege of laying pipes to the river for his own use. The only matter complained of by the plaintiff, as impairing the obligation of the contract contained in its charter, was an ordinance of the city council, granting to the Louisiana Sugar Refining Com-

pany permission to lay pipes from the river to its factory, which, the plaintiff contended, was not contiguous to the river.

The Louisiana Sugar Refining Company in its answer alleged that its factory was contiguous to the river, that it had the right as a riparian proprietor to draw water from the river for its own use, that its pipes were being laid for its own use only, that the plaintiff had no exclusive privilege that would impair such use of the water by the defendant company, and that the rights and privileges claimed by the plaintiff would constitute a monopoly and be therefore null and void.

The evidence showed that the pipes of the defendant company were being laid exclusively for the use of its factory, and that no private ownership intervened between it and the river but only a public street, and a broad quay or levee, owned by the city and open to the public, except that some large sugar sheds, occupied by lessees of the city, stood upon it, and that the tracks of a railroad were laid across it.

The grounds upon which the Supreme Court of Louisiana gave judgment for the defendants appear by its opinion, which, under the practice of that state, is strictly part of the record, and has always been so considered by this court on writs of error, as well under the Judiciary Act of 1789, which provided that "no other error shall be assigned or regarded as a ground of reversal than such as appears on the face of the record," as under the later acts, in which that provision is omitted. Acts of September 24, 1789, c. 20, § 25, 1 Stat. 86; February 5, 1867, c. 28, § 2, 14 Stat. 386; Rev. Stat. § 709; *Almonester* v. *Kenton,* 9 How. 1, 9; *Grand Gulf Railroad* v. *Marshall,* 12 How. 165; *Cousin* v. *Blanc,* 19 How. 202; *Delmas* v. *Insurance Co.,* 14 Wall. 661, 663, 667; *Crossley* v. *New Orleans,* 108 U. S. 105; *Crescent City Co.* v. *Butchers' Union Co.,* 120 U. S. 141, 146.

That opinion, as printed in 35 La. Ann. 1111, and in the record before us, shows that the grounds of the judgment were, that the right conferred by the legislature of the State upon the Commercial Bank by its charter in 1833, and confirmed to the plaintiff by its charter in 1877, was the exclusive privilege

of supplying the city and its inhabitants with water by means of pipes and conduits through the streets and lands of the city; that by the general law of Louisiana, independently of anything in those statutes, riparian or contiguous proprietors had the right of laying pipes to the river to draw the water necessary for their own use, subject to the authority of the State and the city, in the exercise of the police power, to regulate this right, as the public security and the public good might require; that section 18 of the plaintiff's charter had no other object than to secure, beyond the possibility of doubt, this right of the contiguous owners and the control of the municipal authorities; and that the city was authorized to permit the defendant company to lay pipes across the quay and through the streets from the river to its factory, for the purpose of supplying it with water for its own use.

The Constitution of Louisiana of 1879 does provide, in article 258, that "the monopoly features in the charter of any corporation now existing in the State, save such as may be contained in the charters of railroad companies, are hereby abolished." But the opinion of the Supreme Court of the State shows that it thought it unnecessary and "entirely out of place" to consider the effect of that provision upon the exclusive privilege of the plaintiff; and it was not suggested, either in the petition for the writ of error, or in the assignment of errors, or in any of the briefs filed in this court, that any effect was given by the judgment of the State court to that provision of the Constitution of the State.

The only grounds, on which the plaintiff in error attacks the judgment of the State court, are that the court erred in its construction of the contract between the State and the plaintiff, contained in the plaintiff's charter; and in not adjudging that the ordinance of the city council, granting to the defendant company permission to lay pipes from its factory to the river, was void, because it impaired the obligation of that contract.

The arguments at the bar were principally directed to the question whether upon the facts proved the factory of the defendant company was contiguous to the river. But that is

not a question which this court upon this record is authorized to consider.

This being a writ of error to the highest court of a State, a federal question must have been decided by that court against the plaintiff in error; else this court has no jurisdiction to review the judgment. As was said by Mr. Justice Story, fifty years ago, upon a full review of the earlier decisions, "it is sufficient if it appears by clear and necessary intendment that the question must have been raised, and must have been decided in order to have induced the judgment," and "it is not sufficient to show that a question might have arisen or been applicable to the case, unless it is further shown, on the record, that it did arise, and was applied by the State court to the case." *Crowell* v. *Randall*, 10 Pet. 368, 398. The rule so laid down has been often affirmed, and constantly acted on. *Grand Gulf Railroad* v. *Marshall*, 12 How. 165, 167; *Bridge Proprietors* v. *Hoboken Co.*, 1 Wall. 116, 143; *Steines* v. *Franklin County*, 14 Wall. 15, 21. In *Klinger* v. *Missouri*, 13 Wall. 257, 263, Mr. Justice Bradley declared the rule to be well settled that "where it appears by the record that the judgment of the State court might have been based either upon a law which would raise a question of repugnancy to the Constitution, laws, or treaties of the United States, or upon some other independent ground; and it appears that the court did, in fact, base its judgment on such independent ground, and not on the law raising the federal question, this court will not take jurisdiction of the case, even though it might think the position of the State court an unsound one." And in many recent cases, under § 709 of the Revised Statutes, this court, speaking by the Chief Justice, has reasserted the rule, that to give it jurisdiction of a writ of error to a State court, it must appear affirmatively, not only that a federal question was presented for decision to the highest court of the State having jurisdiction, but that "its decision was necessary to the determination of the cause, and that it was actually decided, or that the judgment as rendered could not have been given without deciding it." *Brown* v. *Atwell*, 92 U. S. 327; *Citizens' Bank* v. *Bank of Liquidation*, 98 U. S. 140; *Chouteau* v. *Gibson*,

111 U. S. 200; *Adams County* v. *Burlington & Missouri Railroad*, 112 U. S. 123; *Detroit Railway* v. *Guthard*, 114 U. S. 133.

In order to come within the provision of the Constitution of the United States which declares that no State shall pass any law impairing the obligation of contracts, not only must the obligation of a contract have been impaired, but it must have been impaired by a law of the State. The prohibition is aimed at the legislative power of the State, and not at the decisions of its courts, or the acts of administrative or executive boards or officers, or the doings of corporations or individuals.

This court, therefore, has no jurisdiction to review a judgment of the highest court of a State, on the ground that the obligation of a contract has been impaired, unless some legislative act of the State has been upheld by the judgment sought to be reviewed. The general rule, as applied to this class of cases, has been clearly stated in two opinions of this court, delivered by Mr. Justice Miller. "It must be the Constitution or some law of the State, which impairs the obligation of the contract, or which is otherwise in conflict with the Constitution of the United States; and the decision of the State court must sustain the law or constitution of the State, in the matter in which the conflict is supposed to exist; or the case for this court does not arise." *Railroad Co.* v. *Rock*, 4 Wall. 177, 181. "We are not authorized by the Judiciary Act to review the judgments of the State courts, because their judgments refuse to give effect to valid contracts, or because those judgments, in their effect, impair the obligation of contracts. If we did, every case decided in a State court could be brought here, where the party setting up a contract alleged that the court had taken a different view of its obligation to that which he held." *Knox* v. *Exchange Bank*, 12 Wall. 379, 383.

As later decisions have shown, it is not strictly and literally true, that a law of a State, in order to come within the constitutional prohibition, must be either in the form of a statute enacted by the legislature in the ordinary course of legislation, or in the form of a constitution established by the people of the State as their fundamental law.

In *Williams* v. *Bruffy*, 96 U. S. 176, 183, it was said by Mr. Justice Field, delivering judgment, " Any enactment, from whatever source originating, to which a State gives the force of law, is a statute of the State, within the meaning of the clause cited relating to the jurisdiction of this court ; " (Rev. Stat. § 709 ;) and it was therefore held that a statute of the so called Confederate States, if enforced by one of the States as its law, was within the prohibition of the Constitution.

So a by-law or ordinance of a municipal corporation may be such an exercise of legislative power delegated by the legislature to the corporation as a political subdivision of the State, having all the force of law within the limits of the municipality, that it may properly be considered as a law, within the meaning of this article of the Constitution of the United States.

For instance, the power of determining what persons and property shall be taxed belongs exclusively to the legislative branch of the government, and, whether exercised by the legislature itself, or delegated by it to a municipal corporation, is strictly a legislative power. *United States* v. *New Orleans*, 98 U. S. 381, 392; *Meriwether* v. *Garrett*, 102 U. S. 472. Accordingly, where the city council of Charleston, upon which the legislature of South Carolina, by the city charter, had conferred the power of taxing persons and property within the city, passed ordinances assessing a tax upon bonds of the city, and thus diminishing the amount of interest which it had agreed to pay, this court held such ordinances to be laws impairing the obligation of contracts, for the reason that the city charter gave limited legislative power to the city council, and, when the ordinances were passed under the supposed authority of the legislative act, their provisions became the law of the State. *Murray* v. *Charleston*, 96 U. S. 432, 440. See also *Home Ins. Co.* v. *City Council of Augusta*, 93 U. S. 116.

But the ordinance now in question involved no exercise of legislative power. The legislature, in the charter granted to the plaintiff, provided that nothing therein should " be so construed as to prevent the city council from granting to any person or persons, contiguous to the river, the privilege of laying

pipes to the river, exclusively for his or their own use." The legislature itself thus defined the class of persons to whom, and the object for which, the permission might be granted. All that was left to the city council was the duty of determining what persons came within the definition, and how and where they might be permitted to lay pipes, for the purpose of securing their several rights to draw water from the river, without unreasonable interfering with the convenient use by the public of the lands and highways of the city. The rule was established by the legislature, and its execution only committed to the municipal authorities. The power conferred upon the city council was not legislative, but administrative, and might equally well have been vested by law in the mayor alone, or in any other officer of the city. *Railroad Co.* v. *Ellerman*, 105 U. S. 166, 172; *Day* v. *Green*, 4 Cush. 433, 438. The permission granted by the city council to the defendant company, though put in the form of an ordinance, was in effect but a license, and not a by-law of the city, still less a law of the State. If that license was within the authority vested in the city council by the law of Louisiana, it was valid; if it transcended that authority, it was illegal and void. But the question whether it was lawful or unlawful depended wholly on the law of the State, and not at all on any provision of the Constitution or laws of the United States.

The cases of *New Orleans Waterworks* v. *Rivers*, 115 U. S. 674, and *St. Tammany Waterworks* v. *New Orleans Waterworks*, 120 U. S. 64, on which the plaintiff relied in support of its bill, were essentially different from the case at bar. In each of those cases, the validity of the article of the Constitution of 1879 abolishing monopolies was drawn in question by the bill, and relied on by the defendants. Rivers did not contend that his property was contiguous to the river. The St. Tammany Waterworks Company had been incorporated since the New Orleans Waterworks Company, under a general statute of the State, for the purpose of supplying the whole city and its inhabitants with water. And both those cases were appeals from the Circuit Court of the United States, upon which this court was not restricted to the consideration

of federal questions decided below, but had jurisdiction to determine the whole case.

The difference in the extent of the jurisdiction of this court on writ of error to the highest court of a State, and on appeal from a Circuit Court of the United States — as affected by the ground of the decision of the court below — is illustrated by the cases of contracts payable in Confederate currency, or made in consideration of loans of Confederate currency, during the war of the rebellion, and by the cases of promissory notes given before that war for the price of persons sold as slaves.

In *Thorington* v. *Smith*, 8 Wall. 1, this court, reversing a judgment of the Circuit Court of the United States in Alabama, held that a contract for the payment of money in Confederate currency was not unlawful. Like decisions have often been made in later cases brought here from the Circuit Courts of the United States. *Planters' Bank* v. *Union Bank*, 16 Wall. 483, 497; *Confederate Note Case*, 19 Wall. 548; *Wilmington & Weldon Railroad* v. *King*, 91 U. S. 3; *Cook* v. *Lillo*, 103 U. S. 792. Yet in *Bethel* v. *Demaret*, 10 Wall. 537, where a suit on a mortgage to secure the payment of promissory notes given for a loan of Confederate currency had been dismissed by the Supreme Court of Louisiana, on the ground that the notes and mortgage were nullities, because the Confederate currency, which constituted the consideration, was illegal by the general law of the State, this court dismissed the writ of error, because no statute of the State was drawn in question. And in *Bank of West Tennessee* v. *Citizens' Bank of Louisiana*, 13 Wall. 432; *S. C.* 14 Wall. 9; where the Supreme Court of Louisiana, affirming a judgment rendered by an inferior court of the State before the adoption of article 127 of the State Constitution of 1868, by which " all agreements, the consideration of which was Confederate money, notes or bonds, are null and void, and shall not be enforced by the courts of this state," dismissed a suit to recover money payable in Confederate notes, basing its judgment both upon that article of the Constitution and upon adjudications in that state before its adoption, this court, speaking by Mr. Justice Swayne, dismissed

a writ of error, and said : " The result in this case would have been necessarily the same if the Constitution had not contained the provision in question. This brings the case within the authority of *Bethel* v. *Demaret*," above cited. In another case at the same. term, the disposition by this court of the case of *Bank of West Tennessee* v. *Citizens' Bank of Louisiana* was thus explained by Mr. Justice Miller: " As it was apparent from the record that the judgment of the court of original jurisdiction was rendered before that article was adopted, we could not entertain jurisdiction when the decision in that particular point was placed on a ground which existed as a fact and was beyond our control, and was sufficient to support the judgment, because another reason was given which, if it had been the only one, we could review and might reverse." *Delmas* v. *Insurance Co.*, 14 Wall. 661, 666. In *Delmas* v. *Insurance Co.* just cited, where the judgment of the Louisiana court was put wholly upon that article of the Constitution, this court therefore took jurisdiction, and reversed the judgment, but said that where a decision of the highest court of a State, " whether holding such contract valid or void, is made upon the general principles by which courts determine whether a consideration is good or bad on principles of public policy, the decision is one we are not authorized to review." And in *Tarver* v. *Keach*, 15 Wall. 67, as well as in *Dugger* v. *Bocock*, 104 U. S. 596, 601, the proposition thus stated was affirmed, and was acted on by dismissing a writ of error to a State court. So in *Stevenson* v. *Williams*, 19 Wall. 572, where a judgment of the Supreme Court of Louisiana, annulling a judgment of a lower court, on the ground that the promissory notes on which it was rendered had been given for a loan of Confederate money, was brought here by writ of error, this court, speaking by Mr. Justice Field, after disposing of a distinct federal question, and observing that the aforesaid ground would not be deemed, in a federal court, sufficient to set aside the judgment, said : " But the ruling of the State court, in these particulars, however erroneous, is not subject to review by us. It presents no federal question for our examination. It conflicts with no part of the Constitution, laws or treaties of the United States.

Had the State court refused to uphold the judgment because of the provision in the Constitution of the State, subsequently adopted, prohibiting the enforcement of contracts founded upon Confederate money, a federal question would have been presented. 'That provision, however, does not appear to have caused the ruling." 19 Wall. 576, 577. Those cases clearly establish that, on a writ of error to a State court, this court had jurisdiction to review and reverse the judgment, if that judgment was based wholly upon the State Constitution; but that if it was based on the previous law of the State, this court had no jurisdiction to review it, although the view taken by the State court was adverse to the view taken by this court in earlier and later cases coming up from a Circuit Court of the United States.

In actions brought upon promissory notes given for the purchase of slaves before the war, the same distinction has been maintained. The Constitutions adopted in 1868, by the States of Arkansas, Georgia and Louisiana respectively, provided that the courts of the State should not enforce any contract for the purchase or sale of slaves. In *Osborn* v. *Nicholson*, 13 Wall. 654, a judgment rendered for the defendant by the Circuit Court of the United States for the District of Arkansas, in an action on a promissory note for the purchase of a slave, was reversed, because this court was of opinion that the contract was valid at the time when it was made, and therefore its obligation was impaired by the subsequent constitution. For like reasons, this court, in *White* v. *Hart*, 13 Wall. 646, reversed a similar judgment rendered by the Supreme Court of the State of Georgia, and based upon the provision of its constitution. But in *Palmer* v. *Marston*, 14 Wall. 10, where the Supreme Court of Louisiana, in a similar action, had placed its judgment for the defendant upon the law of the State, as established and acted upon before the adoption of the Constitution of 1868 and since adhered to, and had declined to pass upon the question whether the provision of that constitution was valid or invalid as an act of legislation and in relation to the article of the Constitution of the United States against impairing the obligation of contracts,

because it was unnecessary and could have no practical influence upon the result, this court dismissed a writ of error, for want of jurisdiction, saying: "It thus appears that the provision of the State constitution upon the subject of slave contracts was in no wise drawn in question. The decision was governed by the settled principles of the jurisprudence of the State. In such cases this court has no power of review." "Substantially the same question arose in *Bank of West Tennessee* v. *Citizens' Bank of Louisiana*, heretofore decided. The writ of error was dismissed for want of jurisdiction. The same disposition must be made in this case."

These cases are quite in harmony with the line of cases, beginning before these were decided, in which, on a writ of error upon a judgment of the highest court of a State, giving effect to a statute of the State, drawn in question as affecting the obligation of a previous contract, this court, exercising its paramount authority of determining whether the statute upheld by the State court did impair the obligation of the previous contract, is not concluded by the opinion of the State court as to the validity or the construction of that contract, even if contained in a statute of the State, but determines for itself what that contract was. Leading cases of that class are *Bridge Proprietors* v. *Hoboken Co.*, 1 Wall. 116, in which the State court affirmed the validity of a statute authorizing a railway viaduct to be built across a river, which was drawn in question as impairing the obligation of a contract, previously made by the State with the proprietors of a bridge, that no other bridge should be built across the river; and cases in which the State court affirmed the validity of a statute, imposing taxes upon a corporation, and drawn in question as impairing the obligation of a contract in a previous statute exempting it from such taxation. *State Bank* v. *Knoop*, 16 How. 369; *Ohio Life Ins. & Trust Co.* v. *Debolt*, 16 How. 416; *Mechanics & Traders' Bank* v. *Debolt*, 18 How. 380; *Jefferson Branch Bank* v. *Skelly*, 1 Black, 436; *New Jersey* v. *Yard*, 95 U. S. 104; *Memphis & Charleston Railroad* v. *Gaines*, 97 U. S. 697, 709; *University* v. *People*, 99 U. S. 309; *Louisville & Nashville Railroad* v. *Palmes*,

109 U. S. 244; *Memphis Gas Co. v. Shelby County,* 109 U. S. 398; *Vicksburg &c. Railroad v. Dennis,* 116 U. S. 665. In each of those cases, the State court upheld a right claimed under the later statute, and could not have made the decision that it did without upholding that right; and thus gave effect to the law of the State drawn in question as impairing the obligation of a contract.

The distinction between the two classes of cases — those in which the State court has, and those in which it has not, given effect to the statute drawn in question as impairing the obligation of a contract — as affecting the consideration by this court, on writ of error, of the true construction and effect of the previous contract, is clearly brought out in *Kennebec Railroad v. Portland Railroad,* 14 Wall. 23. That was a writ of error to the Supreme Judicial Court of Maine, in which a foreclosure, under a statute of 1857, of a railroad mortgage made in 1852, was contested upon the ground that it impaired the obligation of the contract, and the parties agreed that the opinion of that court should be considered as part of the record. Mr. Justice Miller, in delivering judgment, after stating that it did appear that the question whether the statute of 1857 impaired the obligation of the mortgage contract " was discussed in the opinion of the court, and that the court was of the opinion that the statute did not impair the obligation of the contract," said: " If this were all of the case, we should undoubtedly be bound in this court to inquire whether the act of 1857 did, as construed by that court, impair the obligation of the contract. *Bridge Proprietors v. Hoboken Co.,* 1 Wall. 116. But a full examination of the opinion of the court shows that its judgment was based upon the ground that the foreclosure was valid, without reference to the statute of 1857, because the method pursued was in strict conformity to the mode of foreclosure authorized, when the contract was made, by the laws then in existence. Now, if the State court was right in their view of the law as it stood when the contract was made, it is obvious that the mere fact that a new law was made does not impair the obligation of the contract. And it is also clear that we cannot inquire whether the Supreme Court of Maine

was right in that opinion.  Here is, therefore, a clear case of a sufficient ground on which the validity of the decree of the State court could rest, even if it had been in error as to the effect of the act of 1857 in impairing the obligation of the contract.  And when there is such distinct and sufficient ground for the support of the judgment of the State court, we cannot take jurisdiction, because we could not reverse the case, though the federal question was decided erroneously in the court below against the plaintiff in error.  *Rector* v. *Ashley*, 6 Wall. 142; *Klinger* v. *Missouri*, 13 Wall. 257; *Steines* v. *Franklin County*, 14 Wall. 15.  The writ of error must therefore be dismissed for want of jurisdiction."  14 Wall. 25, 26.

The result of the authorities, applying to cases of contracts the settled rules, that in order to give this court jurisdiction of a writ of error to a State court, a federal question must have been, expressly or in effect, decided by that court, and, therefore, that when the record shows that a federal question and another question were presented to that court and its decision turned on the other question only, this court has no jurisdiction, may be summed up as follows: When the State court decides against a right claimed under a contract, and there was no law subsequent to the contract, this court clearly has no jurisdiction.  When the existence and the construction of a contract are undisputed, and the State court upholds a subsequent law, on the ground that it did not impair the obligation of the admitted contract, it is equally clear that this court has jurisdiction.  When the State court holds that there was a contract conferring certain rights, and that a subsequent law did not impair those rights, this court has jurisdiction to consider the true construction of the supposed contract, and, if it is of opinion that it did not confer the rights affirmed by the State court, and therefore its obligation was not impaired by the subsequent law, may on that ground affirm the judgment.  So, when the State court upholds the subsequent law, on the ground that the contract did not confer the right claimed, this court may inquire whether the supposed contract did give the right, because, if it did, the subsequent law cannot be upheld.  But when the State court gives no

effect to the subsequent law, but decides, on grounds independent of that law, that the right claimed was not conferred by the contract, the case stands just as if the subsequent law had not been passed, and this court has no jurisdiction.

In the present case, the Supreme Court of Louisiana did not, and the plaintiff in error does not pretend that it did, give any effect to the provision of the Constitution of 1879 abolishing monopolies. Its judgment was based wholly upon the general law of the State; and upon the construction and effect of the charter from the legislature to the plaintiff company, and of the license from the city council to the defendant company, and in no degree upon the Constitution or any law of the State subsequent to the plaintiff's charter. The case cannot be distinguished in principle from the cases above cited, in which writs of error to State courts have been dismissed for want of jurisdiction. As was said in *Bank of West Tennessee v. Citizens' Bank of Louisiana*, above cited, " The result in this case would have been necessarily the same if the Constitution had not contained the provision in question."

*Writ of error dismissed for want of jurisdiction.*