MICHAELA LEONARDA ,ALMONESTER, THE WIFE SEPARATED FROM BED
AND BOARD OF JOSEPH XAVIER DELFAU DE PONTALBA; PLAINTIFF
IN ERROR, *v.* JOSEPH 'KENTON.

State courts have a right to decide upon the true running of lines of tracts of land,
and this court has no authority to review those decisions under the twenty-fifth sec-
tion of the Judiciary Act.

Where the decision was that the true lines of the litigants did not conflict with each
other, but the losing party alleged that her adversary's title was void under the
correct interpretation of an act of Congress, this circumstance did not bring the
case within the juisdiction of this court.

Nor is the jurisdiction aided because the State court issued a perpetual injunction,
upon the losing party. This was a mere incident to the decree, and arose from the
mode of practice in Louisiana, where titles are often quieted in that way.

THIS case was brought up, by writ of error, from the Su-
preme Court of the State of Louisiana for the Eastern District.
It was brought up upon the ground that there was drawn in
question the validity of a statute and an authority exercised
under the United States, and the decision was against the va-
lidity of the said statute or authority; also, that there was
drawn in question the construction of a clause of a treaty and
of a statute of the United States, and the decision was against
the title, right, and privilege specially claimed and set up under
such clauses of said treaty and statute.

As the suit was more analogous to an ejectment than to any
other remedy known to the common law, it will be best ex-
plained by showing the title set up by the respective parties.
The first step in the proceedings was the filing of the follow-
ing petition, on December 28, 1831.

" To the Honorable the District Court of the First District of
the State of Louisiana. The Petition of Joseph Kenton,
residing in the City of New Orleans, respectfully shows :

" That your petitioner is the lawful and only proprietor and

VOL. IX.          1

owner of a tract of land situated in the rear of the city of New Orleans, between the inhabited part of the city and the Bayou St. Jean; said tract having two arpents front on the south-westerly side of the Canal Carondelet, near the first half-moon, and extending in depth between parallel lines to Common Street, on which also it fronts; the one side line being seventeen arpents ten toises and two feet, and the other seventeen arpents and five toises in length; all of which appears more particularly by a plan of said tract of land drawn by Charles F. Zimpel, late a sworn surveyor, dated the 11th day of February, (1835,) and deposited in the office of Theodore Seghers, Esq., notary public of this city, on which plot your petitioner's tract of land is designated as No. 3, and is marked on the general plan of the city of New Orleans, executed and published by the said Charles F. Zimpel, ' Wdw. Fleitas.'

" Your petitioner acquired said tract of land of Jean Manuel Fleitas, Barthelemy Fleitas, and Virginie Fleitas, wife of Louis Aime Pigneguy, by act passed before the said Theodore Seghers, notary public, on the 19th day of May (1835).

" Your petitioner alleges, that from that period until the present time he has had the quiet possession of said tract of land, and that those from whom he derived title have had the peaceable and uninterrupted possession of the same, under perfect titles, for upwards of thirty-five years.

" Your petitioner further shows, that notwithstanding the premises, Mrs. Michaela Leonarda Almonester, the wife of Joseph Xavier Celestin Delfau, Baron of Pontalba, separated from bed and board from the said husband, by a judgment of the tribunal of the first instance, at Senlis, in France, bearing date the 25th day of February, (1836,) has, by her agent, Noel Barthelemy Le Breton, residing in this city, offered for sale at public auction, to be sold on the 28th day of this present month, through Messrs. Mossy & Garidel, auctioneers, a certain tract of land divided into a great number of lots, fronting on the Bayou road and extending across the Canal Carondelet, over the property of your petitioner, to Common Street.

" Your petitioner further shows, that the said Noel Barthelemy Le Breton has been constituted the general and special agent at New Orleans of the said Mrs. Pontalba, by powers of attorney executed before Berceau and his colleague, notaries at Paris, in France, where she resides. That your petitioner has amicably requested the said agent to desist from this intended sale as far as it affects the above-described property of your petitioner, and would disturb him in the peaceable possession thereof, but he refuses to yield to said request.

"Your petitioner therefore prays that a writ of injunction may issue, enjoining the said Mrs. Pontalba and Noel Barthelemy Le Breton, her agent, as well as Messrs. Mossy & Garidel, the above-mentioned auctioneers, from proceeding to sell, until the further order of the court, such of the above-mentioned lots of ground as are situated on the above-described tract of land belonging to your petitioner.

"Your petitioner further alleges, that the said Mrs. Pontalba and her agent pretend title to the aforesaid property of your petitioner, and hold out to the public that your petitioner has no title to the same, and by their deeds and words aforesaid have caused him damage to the amount of five thousand dollars, which he is entitled to recover, and to have them enjoined from ever pretending title to said property.

"Wherefore your petitioner respectfully prays that the said Mrs. Pontalba, by her agent Noel Barthelemy Le Breton, may be cited to appear and answer this petition, and to set forth by what title she claims the property above described of your petitioner; and that, after all due and legal proceedings, judgment may be rendered in favor of your petitioner against the said Mrs. Pontalba; that the sale by her of any part of the above-described tract of land belonging to your petitioner be perpetually enjoined; and that she may be moreover perpetually enjoined from pretending title to said property; that she be condemned to pay to your petitioner five thousand dollars damages, with all costs of suit; and that your Honor would afford all such other and further relief as the nature of his case may require, and as to justice and equity may belong. As in duty bound, &c.

(Signed,)   Isaac T. Preston, *Att'y for Petitioner*."

To this petition the defendant filed the following answer.

"The Answer of Michaela Leonarda Almonester, the Wife separated from bed and board of Joseph Xavier Celestin Delfau Pontalba, herein represented by Noel Barthelemy Le Breton, her attorney in fact, to the Petition filed in this Court at the suit of Joseph Kenton, of New Orleans:

"This respondent comes now into court by her counsel, and for answer says, that she denies all and singular the facts and allegations in the said petition set forth. And this respondent further answering says, that the plaintiff could derive no title whatsoever to the property by him claimed from the transfer unto him executed by Jean Manuel Fleitas, Barthelemy Fleitas, and Virginie Fleitas, per act before T. Seghers, notary, of the 19th of May, 1835.

" This respondent denies that the plaintiff's vendors had at any time any good title to the property by them sold, or were ever in possession thereof.

" This respondent, on the contrary, contends that she is the sole and lawful proprietor of the land claimed by the plaintiff, and that she has had title to, as well as possession of, the same for fifty-five years and upwards.

" That this respondent further says, that the injunction sued for and obtained by said Kenton against the sale of said property was unjust, illegal, and malicious, and has inflicted injury to the interests of this respondent to an amount exceeding twenty-five thousand dollars; wherefore this respondent prays that said injunction be dissolved, at the costs of the plaintiff; that she be permitted to reconvene against him, and have judgment for the said sum of twenty-five thousand dollars, and to that effect that the said Kenton be cited to appear and answer this petition in reconvention, and be condemned as prayed for.

" And this respondent prays for all other and further relief which the nature or equity of the case may require.

" And this respondent will ever pray, &c.

 (Signed,)    Soule,

       C. Derbigny, *Of Counsel.*"

Much documentary evidence was filed, and oral testimony taken in open court, all of which was inserted in the record.

When the cause came on for trial, in February, 1838, the plaintiff, Kenton, produced a Spanish grant, dated 20th of May, 1801, issued to Carlos Guardiola, by Don Ramon de Lopez y Angulo, the Intendant of Louisiana, and a regular chain of conveyances from the original grantee down to himself. This grant covered the land in dispute.

The defendant claimed title under the following documents:

1st. A concession to Louis Cezaire Le Breton, in 1752.

2d. A concession to Alexandre Latil, in 1764.

Upon the trial, the District Court decided that neither of these concessions included the land in controversy.

The defendant then relied upon a plea of prescription which had been previously filed, being a plea of prescription of ten, twenty, and thirty years. But the court overruled the plea for each of these periods of time.

The case was carried by appeal to the Supreme Court of the State of Louisiana, where the argument involved the following points, viz. : —

1. That the grant to Guardiola was void, because, after the 1st of October, 1800, the date of the treaty of San Ildefonso,

Spain was no longer the sovereign of Louisiana, and because the 14th section of the act of Congress passed on the 26th March, 1804, declared all such grants to be null and void. But the court overruled these objections to the grant, and also decided that the District Court was right in saying that the two concessions set up by the defendant did not cover the land in dispute, and in saying also that the plea of prescription was not well founded. The Supreme Court therefore affirmed the judgment of the District Court; which was, that the injunction served upon the defendant should be made perpetual.

A rehearing was afterwards granted, on the single question whether Guardiola's grant was protected by the proviso to the 14th section of the act of Congress of the 26th March, 1804. That section declares, " that all grants for lands within the territories ceded by the French Republic to the United States by the treaty of the 30th of April, 1803, the titles whereof were, at the date of the treaty of San Ildefonso, in the crown, government, or nation of Spain, and every act and proceeding subsequent thereto, of whatsoever nature, towards the obtaining of any grant, title, or claim to such lands, and under whatsoever authority transacted or pretended, be, and the same are hereby declared to be, and to have been from the beginning, null and void, and of no effect in law or equity; provided, nevertheless, that any thing in this section contained shall not be construed to make null and void any *bonâ fide* grant, made agreeable to the laws, usages, and customs of the Spanish government, to an actual settler on the lands so granted for himself, and his wife and family; or to make null and void any *bonâ fide* act or proceeding done by an actual settler, agreeably to the laws, usages, and customs of the Spanish government, to obtain a grant for lands actually settled on by the person or persons claiming title thereto, if such settlement in either case was actually made prior to the 20th day of December, 1803," &c.

After the rehearing, the court decided that the grant to Guardiola was embraced in the proviso which protects actual settlers before the cession to the United States, and was also protected by the treaty of cession itself.

From this judgment, a writ of error brought the case up to this court.

It was argued by *Mr. Brown*, on the part of Kenton, the defendant in error, no counsel appearing for the plaintiff in error. This argument was an elaborate examination of the act of Congress, and the other grounds upon which the Supreme

1 *

Court of Louisiana rested its judgment; but as the decision of this court was confined to a single view of the case, it is not deemed necessary to insert Mr. Brown's argument.

Mr. Justice CATRON delivered the opinion of the court.

This case is brought before us by writ of error to the Supreme Court of Louisiana. The suit originated in a petition filed the 28th of December, 1836, by Kenton, in the First District Court of that State, alleging that the defendant, Pontalba, through her agent, Le Breton, had advertised for sale certain lots of ground in the rear of the city of New Orleans, claiming to own the same, which land the petitioner averred belonged to him, and was, at the time of filing the bill, in his possession, and that it had been in the peaceable and uninterrupted possession of himself and those under whom he derived title for upwards of thirty-five years. The petitioner therefore prayed that the defendant might be restrained from selling or intermeddling with the property in question, and that he might be quieted in his title. In answer, the defendant averred that she was the legal owner of the premises, and had been in possession of the same for more than fifty-five years. On the trial of the cause in the District Court, the plaintiff introduced, with other testimony, —

1. A concession made by Don Ramon de Lopez y Angulo, with the certificates of survey, records, &c., dated May 20, 1801, granting the premises in question to Carlos Guardiola.

2. An act of sale from Guardiola to Fleitas, conveying the property to the latter, dated June 5, 1805.

3. A sale of the land from the heirs of Fleitas to the plaintiff, dated May 19, 1835.

4. He also produced testimony to show that he and those under whom he claimed had been in possession since the date of the grant to Guardiola in 1801.

The defendant then introduced in evidence an act of sale from L. C. Le Breton to Madame Dauberville for six arpents and fourteen toises front, dated May 30, 1757, reciting that the vender was the owner of the premises sold, as well as of two arpents front adjoining the same, which he reserved from such sale. She also presented acts of sale made in 1757 and 1758, from Le Breton and from the succession of Dauberville, conveying the whole of the above-mentioned lands to Latil, and a grant made to the latter by the Spanish government in 1764. She then exhibited a full chain of title from Latil to herself, and proved possession of the premises covered by her title papers from 1789.

A decree was made by the District Court in favor of the petitioner, Kenton, and a perpetual injunction awarded in accordance with his prayer. The cause was carried to the Supreme Court on appeal, where the decree of the inferior court was affirmed. Both courts decided that the premises included in the Spanish grant of 1801, to Guardiola, were not the same as those covered by the acts of sale and grant to Latil.

Now that this court has no jurisdiction, under the 25th section of the Judiciary Act of 1789, to reëxamine the decision of a State court, which drew in question the mere fact of where a dividing line between two tracts of land was, is too plain for discussion. Had the decision of the Supreme Court of Louisiana stopped here, then certainly jurisdiction would be wanting. But that court went further in its first opinion; and then a rehearing was demanded, after the first decree in favor of Kenton had been pronounced; and a rehearing was granted on the single question whether Guardiola's grant was protected by the proviso to the 14th section of the act of Congress of March 26, 1804.

That section declares, " that all grants for lands within the territories ceded by the French Republic to the United States by the treaty of the 30th of April, 1803, the titles whereof were, at the date of the treaty of San Ildefonso, in the crown, government, or nation of Spain, and every act and proceeding subsequent thereto, of whatsoever nature, towards the obtaining of any grant, title, or claim to such lands, and under whatsoever authority transacted or pretended, be, and the same are hereby declared to be, and to have been from the beginning, null and void, and of no effect in law or equity; provided, nevertheless, that any thing in this section contained shall not be construed to make null and void any *bonâ fide* grant, made agreeably to the laws, usages, and customs of the Spanish government, to an actual settler on the lands so granted for himself, and his wife and family; or to make null and void any *bonâ fide* act or proceeding done by an actual settler, agreeably to the laws, usages, and customs of the Spanish government, to obtain a grant for lands actually settled on by the person or persons claiming title thereto, if such settlement in either case as actually made prior to the 20th day of December, 1803," &c.

And on this proviso of the statute, an opinion was expressed by the court below, which is found in the record, and was as follows : —

" The proviso above recited contemplates two classes of titles : first, those granted according to the ordinances and usages of the Spanish government, upon the usual condition

of settlement upon the lands so granted to heads of families, provided such condition was complied with before the cession to the United States; and second, such as were applied for after the settlement was made, commonly called permission to settle with a *requête*. In both cases we are to look, in our opinion, to the laws and usages of the Spanish government for the definition of an actual settler, rather than to subsequent acts of Congress, which provide for preëmptions in favor of such persons as shall have settled upon, inhabited, and cultivated a part of the public domain. This proviso recognizes the authority of Spain to make certain grants after the date of the treaty of San Ildefonso, and therefore it cannot be said that Congress had treated this as exclusively a political question, and absolutely decided that the sovereignty was changed at that period. The only doubt is, whether Guardiola can be classed in either of the categories expressed in the act of Congress. He exhibits a title in form to a small tract of land, which was appurtenant to another tract already owned and possessed by him. The Intendant of the province, in the preamble of his patent, states him to be a resident of the city, and owner of a piece of land on the Bayou road, where he has his dwelling; which property is deficient in depth to graze his cattle upon. It is for these reasons that a small additional grant is made to him. This was done in conformity with the existing ordinances relative to the distribution of the public domain; Guardiola was certainly regarded by the Intendant as actually settled on the land to which his new grant was but an appendage; and although the expression used in the opinion of the court first pronounced, that the grant was inhabited and improved, was perhaps not strictly accurate, especially with reference to subsequent acts of Congress defining rights of preemptions, yet substantially we consider the grant to Guardiola as embraced in the proviso which protects actual settlers before the cession to the United States; and we cannot suppose Congress intended by the act in question, or by any subsequent legislation, to declare null and void those small grants made *borâ fide* according to the usages of the Spanish government to inhabitants of the province, to meet the wants of a growing population.

"Looking upon Guardiola's grant as one made in good faith, according to the usages and ordinances of the Spanish government, and as having become private property according to those laws and usages, and according to the treaties between France and Spain, and the law of nations, we consider it protected, not merely by the proviso of the act of Congress first recited, but by the treaty of cession.

"It is therefore ordered, adjudged, and decreed, that the judgment first pronounced remain undisturbed."

By section 909 of the Code of Practice governing the Supreme Court of Louisiana, that court is required to state the reasons for its judgments, by citing as exactly as possible the laws on which it founds its opinions; and by section 912, a party dissatisfied with the judgment may apply for a rehearing in the cause, by petition. From the petition and opinion, it does appear that a construction of the 14th section of the act of 1804 was drawn in question by the State court; but it does not therefore follow that this court has jurisdiction; the fact is found, that no interference exists between the tracts of land respectively claimed, and with this settled fact we have to deal. It concluded the right against Pontalba; she could not go beyond the boundary established as the true one by that decision. And the next inquiry is, whether she can be heard in this court, to call in question a construction of the act of 1804, which did not touch her paper title, nor affect her right in any degree. The State court held that Kenton's title was valid, and sanctioned by the proviso to the 14th section of the act; the decision, therefore, so far as he was concerned, was not opposed, but in conformity, to the right claimed under the statute; and the defendant below, Pontalba, having no opposing title to the land in dispute, could not be injured by the opinion expressed on Kenton's title. The only plausible ground on which jurisdiction could be claimed arises from the mode of proceeding in the State courts. The action was brought by Kenton for slander of title, and to prevent a public sale of land then in his actual possession, and which had been so for thirty-five years next previous. The defendant, Pontalba, denied that Kenton had any title, and set up title in herself to the land claimed by Kenton in his petition; and by her answer and petition, in reconvention asked an affirmative decree in her favor for damages; thus becoming a plaintiff likewise. This is an ordinary mode of trying title in Louisiana. Issue being joined on the right, and this adjudged to be in Kenton, the court gave a decree in his favor, and awarded a perpetual injunction against Pontalba, restraining her from selling the land. The injunction was a mere incident to a final adjudication establishing a right to real property; the decree carried with it (as against the opposing party) conclusive force, to which nothing could be added by the award of an injunction; it was intended to prevent any further illegal intermeddling by the other party, and was rather in execution of the decree than a substantial part of it. The awarding such writ

cannot, therefore, be relied on as a circumstance giving this court jurisdiction ; and being of opinion that on no ground presented by the record can this cause be entertained, we accordingly order that it be dismissed.

### *Order.*

This cause came on to be heard on the transcript of the record from the Supreme Court of the State of Louisiana for the Eastern District, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that this cause be, and the same is hereby, dismissed for the want of jurisdiction.