NATHAN C. MANROSE

v.

CHARLES L. V. PARKER.

1. DEDICATION—*building fence through mistake of line.* Where a public road is laid out on a section line, sixty feet wide, and the owner of land on one side thereof, in inclosing his land, intends to give thirty feet for his half of the road, but, through ignorance of the section line and by mistake, puts his fence some sixty feet from such line, which remains there about eighteen years before he discovers the mistake, he will not be held to have dedicated the entire sixty feet outside his fence, but only thirty feet from the section line.

2. HIGHWAY—*by prescription.* Where a road sixty feet in width is laid out with its centre on a section line, the claim of the public, without regard to where the road runs, and is worked and traveled, will be referred to their legal claim of right, that is, as the road was laid out, and no title by prescription will be acquired by the use of the road a few rods off such line for a period of twenty years. To give such a title, the public use must have been twenty years under a claim of right, and there must have been acquiescence by the owner of the land in the user.

3. INSTRUCTION—*making modification as by the court.* It is not necessary that an instruction should show a modification was given by the court, and words so indicating should be omitted, but the error is not so material as to justify a reversal.

APPEAL from the Circuit Court of Bureau county; the Hon. EDWIN S. LELAND, Judge, presiding.

Mr. GEORGE W. STIPP, and Mr. RICHARD M. SKINNER, for the appellant.

Messrs. ECKELS & KYLE, and Messrs. FARWELL & WARREN, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

In the year 1847, the public authorities of Bureau county laid out a road, a part of which was on the section line between sections 13 and 24 in a certain township, the road being sixty feet wide, and the centre thereof the section line. In the fall of 1855, Parker, the owner of the south-west quarter of section

13, fenced said quarter section on the south. At that time the land next south was all inclosed, and Parker built his fence so as to leave four rods in width between it and the fence south of it.

From the time Parker built his fence, in 1855, until the winter of 1872, no change was made in the fences, nor was there any question until then but that the road as fenced was on the section line as it was located. Parker then, by a sur-- vey, found that the road, as fenced, was not on the section line, but was all, or nearly all, on his land. In the spring of 1874, a petition was presented to the commissioners of highways for a survey and platting of the road as originally located, in pursuance of the statute on that subject. Under that petition the commissioners caused a survey to be made by the county surveyor of the county. According as the section line between sections 13 and 24 was established by this survey, the fence which Parker had built in 1855 was some four rods north of the section line.

After this survey Parker removed and placed his fence south about a rod and a half, giving off from his land some thirty-four feet north of the section line as surveyed by the county surveyor. Some time after the fence had been thus removed by Parker, Manrose, one of the commissioners of highways of the town in which the fence was situated, tore it down as being an obstruction in the public highway. For this act of tearing down his fence, Parker, on the 7th day of June, 1875, sued Manrose before a justice of the peace and recovered, and on appeal to the circuit court recovered again, and from the judgment of the circuit court this appeal is taken by Manrose.

The matter of controversy is, whether the fence which the defendant took down was in the public highway. Defendant admits in his testimony that he knew when he took down the fence that if the road was originally laid out on the section line, and the section line was the centre of the road, the fence which he took down was not in the road as laid out. It must

be held, from the evidence, that the road was thus laid out; and so leaving as the question, whether there was a public highway where the fence stood, by dedication or prescription.

The errors assigned relate to instructions which were given and refused upon these subjects.

We deem it enough to consider but two of the instructions asked by the defendant and given, as modified by the court, as they appear to involve all of the essential questions in the case. They are as follows:

" 5. If the jury believe, from the evidence, that the plaintiff, about the year 1855, fenced out a strip of his land, intending that it should be taken by the public for a highway, of which strip the place in question is a part; that the public accepted said strip of land by working and improving the same under the direction the public highway officers, and by using the same as a public highway, and that plaintiff, well knowing such improvement and use, acquiesced therein for about eighteen years without objection, then the place in question has been dedicated to the public, and the jury must find the defendant not guilty.

### Qualification by the Court:

" If, however, there was a laid out road sixty feet wide, with the section line as the centre line of the road, and if the road was fenced by the plaintiff with intent to fence on the north line of said laid out road, and if by mistake the fence was placed between twenty and thirty feet too far north, then the dedication would be of the north thirty feet in width of the road along the section line of plaintiff's land,—if he only intended to dedicate the north half of the road as laid out on the south thirty feet only of his land north of the section line."

" 4. If the jury believe, from the evidence, that a public road was used by the public over the place in question for the period of twenty years next before the plaintiff put his fence therein, without interruption, other than such temporary deviation as occurred by reason of bad roads, and that the

plaintiff, and they who owned the land before him, acquiesced therein, then the law conclusively presumes that the owner of the land in question granted the same to the public for a highway, and in such case the jury must find the defendant not guilty.

### Qualification by the Court:

" If, however, there was a surveyed and laid out road sixty feet wide with the section line for the centre of it, and if the travel was intended as a use of said laid out road, and diverged from it merely because it was not fenced and worked, and merely because of the ignorance of the travelers as to its limits or for the convenience of said travelers to avoid bad places, then the road, by prescription or presumed grant of it as used for twenty years, would be the said laid out road, and not one or more roads on such place or places as a track or tracks might have been made outside of the surveyed limits of said laid out road. And it is the duty of said public authorities, when the limits of the highway are clearly defined, to see to it that the road labor is not done outside the limits of the road, and that fences are kept out of it."

To the refusing of the instructions as asked, and the giving of them as modified by the court, the defendant excepted.

There can be no question, from the evidence, that Parker, originally, in 1855, built his fence where he did, through mistake. He had but recently come into the country and was ignorant of the true lines of his land; he had heard a road had been laid there on the section line; he intended to give off from his own land half the road, thirty feet, and supposing the fence on the south of him was on the south line of the road, built his fence so as to leave a space of sixty feet between fences. But the fence on the south, instead of being on the south line of the road, as supposed, was on, or nearly on, the section line, so that instead of fencing off for the road thirty feet from his own land, he actually, through mistake, fenced off some sixty feet. At the time he built the fence there was no well defined traveled way between the

fence on the south and where he built his, ponds and sloughs preventing travel there, and the usual travel was around and on the land he fenced. Upon this evidence the question is, how much land was the subject of the dedication? Whether thirty feet, the quantity which was intended to be given to the public, or the whole sixty feet actually fenced off through mistake.

The instructions as asked, asserted the latter,—as modified, the former.

In *Harding* v. *Town of Hale*, 61 Ill. 192, this court recognized the rule as laid down in Angell on Highways, sec. 142, that the vital principle of dedication is the intention to dedicate, the *animus dedicandi*, and whenever this is unequivocally manifested, the dedication, so far as the owner of the soil is concerned, has been made, and see also to the same effect *Marcy* v. *Taylor*, 19 Ill. 634, *Grube* v. *Nichols*, 36 id. 93, that it is the intention to dedicate which is to determine, upon the question of dedication. We are of opinion that there was here a dedication of only the thirty feet which Parker intended to give to the public, and not of the sixty feet, which, through mistake, he actually fenced off for the use of the public. See *The State* v. *Crow*, 30 Iowa, 258; *The State* v. *Schilb*, 47 id. 611.

The like observations apply upon the question of prescription. To give title by that, the public use must have been for twenty years under a claim of right, and there must have been acquiescence by the owner in the user. The claim of right here on the part of the public, we think, may well be referred to their legal claim of right, viz: the laid out road, the land upon which the road was located by the public authorities, and the acquiescence on the part of Parker in the public use be similarly restricted and held to apply to what he intended to give for the road.

We, therefore, agree with the court below in its refusal of the instructions as asked, and giving them as modified.

Objection is taken to the prefix by the court to the modifications, of the words "qualification by the court." It was not necessary that the instructions should show what modification of them was made by the court, and those words should have been omitted.

But we can not see that the insertion of them here was so calculated to influence the verdict as to make it material error.

We do not find in the case any sufficient ground of estoppel to the setting up that there was no dedication.

The judgment must be affirmed.

*Judgment affirmed.*