HON. T. O. C. HARRISON, } JUDGES.
HON. T. L. NORVAL,

HON. ROBERT RYAN,
HON. JOHN M. RAGAN, } COMMISSIONERS.
HON. FRANK IRVINE,

## CITY OF OMAHA V. SAMUEL HAWVER.

### FILED JUNE 16, 1896.   No. 6747.

1. **Municipal Corporations: DEDICATION FOR STREET: EVIDENCE.**
   Where the acts of an owner of real estate are relied upon to prove
   that he has dedicated it to the public the acts must be such as to
   clearly manifest an intention on his part to dedicate it, and the
   public must have so acted with reference to the property as to in-
   dicate an intention of acceptance of the property dedicated.

2. **Dedication: EVIDENCE.** Acts of an owner which amount to a dedi-
   cation of his property to the public must be such as indicate an
   abandonment of the use of the property exclusively to the public.

3. ———: ———. The plaintiff owned an unplatted tract of land in
   the limits of a city so situate that Sixth street of said city, if ex-
   tended, would pass through it. Before said street was extended
   through his land he sold a part of the tract, conveying it by metes
   and bounds, one of the calls in the conveyance being so many feet

5                                    (1)

to the west line of Sixth street. *Held,* That this act of the owner was not alone sufficient to sustain a finding that he had dedicated any part of his land to the public to be used as a part of said street.

4. ———: ———. Certain acts of an owner of real estate, from which it was claimed he had dedicated to the public a part thereof, set out in the opinion, and *held* not sufficient to sustain a finding of such dedication.

ERROR from the district court of Douglas county. Tried below before DAVIS, J.

*E. J. Cornish* and *James H. Macomber,* for plaintiff in error.

References: *Harding v. Jasper,* 14 Cal., 643; *State v. Trask,* 27 Am. Dec. [Vt.], 559; *Carter v. City of Portland,* 4 Ore., 339; *Bartlett v. City of Bangor,* 67 Me., 460; *Town of San Leandro v. Le Breton,* 72 Cal., 170; *Meier v. Portland Cable R. Co.,* 16 Ore., 500.

*Leavitt Burnham* and *Alfred Pizey, contra.*

References: *McDaniel v. Mace,* 47 Ia., 510; *Bushman v. Gibson,* 15 Neb., 676; *Sanford v. Covington,* 12 Ky. Law Rep., 450; *Graham v. Hartnett,* 10 Neb., 521; *Irwin v. v. Dixion,* 9 How. [U. S.], 10; *In re Beach Avenue,* 70 Hun [N. Y.], 353; *Princeton v. Templeton,* 71 Ill., 69; *Hiatt v. Brooks,* 17 Neb., 33; *Burlington & M. R. R. Co. v. Wendt,* 12 Neb., 76.

RAGAN, C..

Samuel Hawver brought this suit in the district court of Douglas county against the city of Omaha to recover the value of certain of his real estate which he alleged the city, without any authority of law, had on the 19th of November, 1888, appropriated to its use for the purposes of a street. So much of the answer of the city as is material here was as follows: "The said city denies that on the 19th day of November, 1888, it entered upon, seized, or took possession of and appropriated to its use the said

strip of ground in controversy, but in that behalf alleges
the fact to be that said strip of ground, long prior to said
date, had been duly dedicated by the plaintiff to the pub-
lic as a public highway and for the use of the public as a
public street." Hawver had a verdict and judgment and
the city has brought the case here for review.

1. Hawver owned what is known as "Tax Lot 11" in
section 26, township 15 north, and range 13 east.  On one
side of this land was what is known as "Credit Foncier Ad-
dition," to the south line of which extended Sixth street.
On the other side of Hawver's land, crossing an imaginary
extension of said Sixth street at right angles, was Ban-
croft street.  An extension of Sixth street in a straight
line from the south side of "Credit Foncier Addition" to
Bancroft street would pass through Hawver's land.  It
is not disputed that in November, 1888, the city of Omaha
extended Sixth street from the south line of "Credit Fon-
cier Addition" to Bancroft street, and in so doing appro-
priated a strip of land 60 feet in width and 1,287 feet
in length through said tax lot 11, but the contention of
the city is that the strip of ground so appropriated by it
for the extension of Sixth street had been prior to that
time dedicated to the public for the purposes of a street
by Hawver, and this was the only point litigated in the
court below.  At the close of the evidence the city re-
quested the court to charge the jury as follows: "You are
instructed that if you find from the evidence that prior to
the commencement of this action the plaintiff dedicated
the strip of ground in controversy as a part of Sixth
street, it would be your duty to return a verdict in this
action in favor of the defendant." The court refused to
give this instruction and limited the jury to a considera-
tion of the value of the real estate of Hawver appro-
priated by the city for the purposes of Sixth street.  If
the evidence introduced before the jury would have sup-
ported a special finding that Hawver had dedicated the
real estate to the public for the purposes of a street, then
the court erred in refusing to give the instruction re-

quested. The evidence introduced on the trial directed to the question as to whether Hawver had made a dedication of the real estate was as follows: In July, 1885, Hawver sold and conveyed to one Kasper an acre, more or less, of said tax lot 11. The real estate conveyed was described by metes and bounds, one of the calls in the conveyance being the west line of Sixth street.

Q. You may state whether or not any plat was presented to you at the time of making this land contract.

A. Yes, sir.

Q. Describe that plat as near as you can.

A. It was not an engineer's plat. It was a sketch that he had drawn off. He said he had drawn it to a scale and showed me how Sixth street would come through Ann Arbor street and Castellar street, and also the street on the east side of the half street.

Q. This plat of which they speak was a mere paper?

A. Yes, sir.

Q. You do not know whether it was ever filed or acted upon, or what was done with it?

A. No, sir. It was drawn up for the purpose of showing what might be done with the land. It was on stiff engineer's paper.

Q. State whether or not Sixth street in front of your property since that time has been used as a street since it was graded.

A. Since last year, I believe.

Q. What was it before that time?

A. I understand it was a street before it could be used for travel.

Q. Why?

A. There was a ravine in front of my property.

Q. Do you remember the time that Sixth street, near Bancroft, was graded—when the dirt was taken out?

A. Yes, sir.

Q. When was that?

A. At the time they were grading Bancroft street.

Q. Who was grading Bancroft street?

A. The city.

Q. The contractor took the dirt off from Sixth and put it into Bancroft street?

A. Yes, sir.

Q. How far did that extend north from Sixth street at that time?

A. I would think about three hundred feet.

Q. To the point where the gully commences?

A. No, they did not go that far.

Q. What year was Bancroft street graded?

A. I think in 1888.

Q. Is it not a fact that Sixth street, when Bancroft street had been improved somewhat, was graded prior to 1890, and in the year 1888?

A. There has been dirt taken out of there; yes, sir.

Q. In what year was that?

A. At the time they graded Bancroft street. I could not say the year.

Q. It was in the year 1888?

A. I could not say the year.

Q. Can you approximately state?

A. It has been two or three years before this last grading was done.

Q. That was on the line of Sixth street, near Bancroft?

A. Yes, sir.

Q. And extended up to the point where the land fell off into this deep gully?

A. It extended something like three hundred or three hundred and fifty feet north of Bancroft street.

Q. Who took this dirt out of Sixth street near Bancroft?

A. The contractor that had the contract for Bancroft street.

Q. He went on there and took dirt out and carried it onto Bancroft street?

A. Yes, sir.

Q. Was that the contractor for the city for grading Bancroft street?

A. Yes, sir.

Q. His grades are made under the direction of the city engineer?

A. Yes, sir.

Q. Do you know that fact?

A. That is always the fact.

Q. Do you know that they are made under the direction of the city engineer?

A. I do not know; they generally give instructions; I only say the fact as I understand it. I do not know whether the engineer gave the instructions or not.

Q. So far as you know, he might have gone on and taken it by his own authority?

A. Yes, sir.

Q. Do you remember the time that Sixth street, near Bancroft, was graded—when the dirt was taken out?

A. Yes, sir.

Q. When was that?

A. The time that they graded Bancroft street.

Q. Who was grading Bancroft street?

A. The city.

Q. The contractor took the dirt off from Sixth and put it in Bancroft?

A. Yes, sir.

Q. What year was Bancroft street graded?

A. I think 1888.

Q. This is the time that this dirt was taken out of there?

A. Yes, sir.

So far as the above bears upon the city's exercising acts of control over the land in question prior to November, 1888, we think the only legitimate inference from this evidence is that the city contractors, while grading Bancroft street, without authority from anybody went upon the land of Hawver and took away dirt and used it in grading Bancroft street. There is no evidence that this was done under or by the direction of the city authorities, or any of them, nor with their knowledge, nor

does it appear that Hawver ever knew or consented to this act of the contractors. Indeed, it would seem that Hawver at this time was a non-resident of the state. But it is insisted that the act of Hawver in selling and conveying a part of his land, and describing the land sold by metes and bounds, one of which boundaries was Sixth street, is evidence sufficient to sustain a finding that he had dedicated the land now sued for to the public for the purposes of a street. All that we know of the so-called "plat" made by Hawver we gather from the testimony quoted above. No plat of any kind was offered in evidence on the trial, and it is clear that the plat made by Hawver was not such an one as is contemplated by sections 104, 105, and 106, chapter 14, article 1, Compiled Statutes. Hawver had not laid out his land into a city or village, or any addition to one. He had not caused it to be surveyed and platted into lots, blocks, streets, and alleys. In so far as the evidence shows, he had done nothing looking to his land becoming an addition to the city of Omaha, nor towards platting it into lots and blocks. The fair inference from the evidence is that he supposed that Sixth street would some time be extended through his land, and that he made a tracing of his property on a piece of paper simply for his own use and convenience; and in the deed to Kasper he described the land sold to him as bounded on one side by Sixth street, though at that time the street had not been extended and nothing had been done looking to its extension. Where the acts of an owner of real estate are relied upon to prove that he has dedicated it to the public, the acts must be such as to clearly manifest an intention on his part to dedicate it; and the public must have so acted with reference to the property as to indicate an intention on its part of acceptance of the property dedicated. (*Graham v. Hartnett*, 10 Neb., 517; *Gwynn v. Homan*, 15 Ind., 201.) Acts of an owner which it is claimed amount to a dedication of his property to the public must be such as indicate an abandonment of the use of the property exclusively to

the public. (*Irwin v. Dixion*, 50 U. S., 9.) In *Bushman v. Gibson*, 15 Neb., 676, this court held: "Where certain lands in an addition to a city, but not platted, were conveyed by metes and bounds, one of the calls in the deed being a certain number of feet to an alley, thence along said alley, etc., there being in fact no alley at the place indicated, as was well known to the purchaser, but a strip twenty feet in width was reserved for that purpose when the city in fact was extended to that point, held, that the alley was not a public one and the purchaser could not enjoin the owner of the fee from erecting bars across the same." Tested by these authorities, the conduct of Hawver in making the plat of this land and conveying a part of it by metes and bounds, one of which boundaries was Sixth street, is not alone sufficient evidence to sustain a finding that he had dedicated the land in controversy to the public for the purposes of a street. The court therefore did not err in refusing to give the instruction asked by the city and its judgment is

AFFIRMED.