(43 App. Div. 1.)

### KLINE v. HARDING.

(Supreme Court, Appellate Division, Fourth Department. July 6, 1899.)

JUSTICES OF THE PEACE—JUDGMENT.

    A judgment of a justice for defendant for $9.70 costs, entered upon a verdict of "no cause of action," is not irregular because the jury had offered to return a verdict of "no cause of action, providing defendant paid plaintiff $9.50," which sum defendant's counsel offered to pay plaintiffs, if they would find a verdict of no cause of action, and which he did pay to the justice after the verdict was rendered.

    Adams and Spring, JJ., dissenting.

Appeal from Oneida county court.

Action by John Kline against Lyman S. Harding, begun in justice court. From a judgment of the county court of Oneida county reversing a judgment for defendant entered on a verdict (56 N. Y. Supp. 861), the defendant appeals. Reversed.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and NASH, JJ.

Jones, Townsend & Rudd, for appellant.
Martin & Ives, for respondent.

HARDIN, P. J. Plaintiff brought an action in a justice's court, and in his complaint stated that he had a cause of action against the defendant for labor and services performed for the defendant between the 17th of April, 1897, and the 1st of November, 1897.

The plaintiff claimed that he entered the service of the defendant under an agreement that the plaintiff was to be paid 75 cents a day for his services. Plaintiff admitted on the stand, as a witness, that he had received from the defendant the sum of $88, and he claimed a balance due for such services of the sum of $71. The defendant gave evidence upon the trial tending to establish his answer, which was to the effect that he was not indebted to the plaintiff in any sum. He also gave evidence tending to show that all the plaintiff's services were worth was $13 per month, and that he had been fully paid for all the services rendered. There was some evidence given upon the trial tending to show that the services rendered by the plaintiff were for the son of the defendant, and not for the defendant, and that the services were understood to be for the defendant's son at the time the arrangement was entered into for his employment. There was testimony in behalf of the defendant tending to show that there was no indebtedness on the part of the defendant to the plaintiff. There was some evidence, however, tending to establish that, for the purpose of settlement, the defendant offered to the plaintiff $10 before suit was brought. After the cause was summed up in the justice's court by the respective counsel, the jury retired and came back with a proposed verdict, which was in the following language, to wit: "We find that there is no cause of action, providing Mr. Harding, the defendant, pay to the plaintiff $9.50." Thereupon the justice "refused to entertain or receive such a verdict, and ordered the jury to retire again, and said to jury that, if the jury had found that the defendant owed plaintiff $9.50, he (the plaintiff) was entitled to a judgment." While the jury was in the court room, and apparently in the presence of the parties and the justice, the defendant's counsel remarked that, if the jury would find a verdict of no cause of action, the defendant would pay to the plaintiff the sum of $9.50. The jury retired and again returned into court, and delivered a verdict of no cause of action. Thereupon the justice received the verdict, entered the same in his docket, and rendered a judgment in favor of the defendant against the plaintiff for $9.70 costs, having discharged the jury. The defendant, after the verdict was received, in accordance with the agreement of his counsel, paid, in the presence of the justice and of the plaintiff, the sum of $9.50; and it is assumed in the points of the respective counsel that the justice received the $9.50, and applied it towards the satisfaction of the judgment against the plaintiff for costs. Only one verdict was actually rendered and delivered to, and received by, the court, and that verdict was one for no cause of action, and upon that the justice's court acted and rendered its judgment against the plaintiff for costs. There was evidence given, as before remarked, which sustains the conclusion reached by the jury. After the verdict was received of no cause of action, it was the duty of the justice to render judgment against the plaintiff for costs, and no irregularity appears to have occurred after the rendition of the verdict. What took place in the presence of the justice and the jury and the parties does not appear to have been objected to by the plaintiff, nor was the justice called upon to make any ruling as to whether the offer made by the

defendant to pay $9.50 to the plaintiff was improper. When the verdict of no cause of action was actually received, it was the imperative duty of the justice to immediately render judgment in accordance therewith. That duty seems to have been discharged by the justice. It would seem to follow that the judgment actually entered by the justice was regular, and may be sustained. If the foregoing views are adopted, the reversal by the county court of the justice's judgment should be reversed, and the judgment of the justice's court affirmed.

Judgment of the county court reversed, with costs, and the judgment of the justice's court affirmed, with costs. All concur, except ADAMS and SPRING, JJ., dissenting.

(July 18, 1899.)

SPRING, J. (dissenting). It is very evident that, when the jury first reported to the court, they were of the opinion the defendant was indebted to the plaintiff in the sum of $9.50. The justice recognized that fact, and advised the jury their verdict could not be received as rendered, and, if the defendant owed the plaintiff that sum, the latter was entitled to judgment. The defendant's counsel, seeing the handwriting on the wall that implied, not alone a verdict against his client for that sum, but a bill of costs and the sting of defeat as well, promptly intervened, and stated to the jury, if they would find a verdict for the defendant, he would pay to the plaintiff $9.50. This was a positive promise, made directly to the jury, and was unrebuked by the court. It carried weight with the jury, and was accepted by them as a bargain; for they retired, and rendered a verdict in accordance with the suggestion of the defendant's counsel. That is, the jury performed their part in ratifying and making effective the promise made on behalf of the defendant. The courts and text writers have been earnest in decrying any improper interference with the jury, and verdicts have been repeatedly overturned because of it. 2 Wait, Law & Prac. (3d Ed.) p. 620; Baylis, New Trials, 536; Reynolds v. Transportation Co., 9 How. Prac. 7; Oliver v. Trustees, 5 Cow. 283; Kellogg v. Reed, 15 Johns. 455. And it is only necessary to show that the improper interference was "calculated to influence the verdict." Thomas v. Chapman, 45 Barb. 98. It is urged that there should have been an objection to the remark of the counsel. No question had been asked to which objection could be interposed. The examination of witnesses was not under way. The trial had terminated, so far as participation of counsel was concerned, and the statement had been made, and the jury inoculated with the virus of the offer, and an objection would have been a perfunctory act. It will not do, after the defendant has committed gross misconduct which actually controls a verdict, to gloze over his pernicious behavior with the excuse that the plaintiff was not clamorous in his condemnation, when to condemn would have been futile.

The counsel for the defendant was guilty of attempting to control the jury, and his client, who has gained by this intermeddling, should be held responsible for it.

Immediately upon the second report of the jury, the defendant, in ratification of the conduct of his attorney, and in fulfillment of his part of this vicious bargain, paid to the justice the $9.50. It is claimed that the plaintiff, by again failing to protest, acquiesced in this consummation of the deal. He could not prevent the payment, nor its application. He did not receive the money, nor credit for it, in fact; for, when he appealed, he paid the full costs in the judgment against him.

This presents a very clear infraction of the orderly trial of cases. The integrity of jury trials cannot be maintained too strictly, and courts should not seek to palliate the conduct of those engaged in the nefarious practice of perverting their verdicts. In this case we have both the flagrant, unblushing attempt, and its immediate effect in the verdict. Every suitor in a court of justice is entitled to the unbiased judgment of the jury; otherwise, there is no safety and no certainty in a trial before that body. The plaintiff did not receive that in this case, for it is very obvious they were swayed by the promise of the counsel.

The judgment of the county court should be affirmed, with costs to the respondent.

ADAMS, J., concurs.