C. P. BUCH AND PETER PEIFFER, Appellants, v. NICHOLAS FLANDERS, Appellee.

Highways: DIVISION LINE BETWEEN LAND: RELOCATION: ACQUIES-
CENCE. Where a legally laid out highway has served for over twenty-five years to mark the division line between abutting land owners, and each constructed highway fences in accordance therewith and otherwise improved their property with respect thereto, and in conjunction with the general public acquiesced in the use of such highway, one of the parties cannot thereafter question the correctness of its location or compel its removal to correspond to a subsequent survey.

*Appeal from Keokuk District Court.*—HON. A. R. DEWEY, Judge.

MONDAY, JANUARY 26, 1903.

Action in equity, and decree in favor of defendant. Plaintiffs appeal. The opinion states the facts.—*Reversed.*

*F. L. Goeldner* and *D. W. Hamilton* for appellants.

*C. H. Mackey* and *D. T. Stockman* for appellee.

Bishop, C. J.—At some time prior to the year 1862 a public highway had been established, running north and south through the center of sections 27 and 34 in Lafayette township, Keokuk county. During the year 1862, by action of the proper county authorities, a relocation of said highway was ordered, and the same was established to be sixty-six feet in width, and to run as follows: Commencing one fourth mile south of the north line of section 27; running thence east one-half mile; thence south to the township line. Plaintiff Buch now owns the S. ½, and plaintiff Peiffer the N. ½ of the S. E. ¼ of section 34, and defendant Flanders owns the S. W. ¼ of section 35. Plaintiff Buch bought in 1891, plaintiff Peiffer in 1875, and defendant in 1894. Defendant bought of one Campbell, who had been owner of the land since 1869. Up to 1871 no fences were built, and travel north and south was diagonally across said section 35. There was a laid out and traveled road running east and west on the southern line of said sections 34 and 35. During the year 1871 said Campbell, defendant's grantor, set out a hedge fence on his land, and, as he supposed, along the east line of the highway in question. He says: "In building that fence I took for a starting point a stone in the road [the east and west road], which I supposed was correct, and I set my fence thirty-three feet east. * * *. I believed that I was putting it upon the true line."

It appears that the land owners in section 34 also accepted such stone as marking the true line between the sections, and they also fenced, built upon, planted trees,

and otherwise improved their properties accordingly. The highway thereafter was continuously worked and used in the manner usual to country roads. No question was made as to the correct location thereof until October, 1899, when defendant procured the county surveyor to run the section lines and, determine the location of the highway. Therefrom it was found that at the southern extremity, the hedge fence, marking the east line of the highway as used, stands several feet too far east, and that from south to north such hedge runs, bearing west, to a point near the north line of defendant's land, where the same strikes the correct line of the road as determined by the surveyor. Conceding such survey to be correct, it thus appears that the highway, as used, occupies a wedge shaped piece of defendant's land, and that plaintiffs on the other side are in the occupancy of a piece of land corresponding in size and shape, being part of the highway. It may be said, in passing, that it appears from the evidence of the surveyor that the original surveys had not been accurate, and particularly that the line between sections 34 and 35 varies some thirty-five links from the line between the sections immediately to the south thereof. Following the survey in 1899, the defendant proceeded to erect a fence on the east line of the highway as now contended for by him; and this action was brought to abate the obstruction, and for an injunction to restrain interference with the highway as heretofore used. That the parties owning the lands on both sides built their fences, and otherwise improved and acquiesced in the use of the highway, believing the same to be correctly located, and that the highway was thus publicly used, without question, for a period of more than twenty-five years, are ultimate facts clearly established by the record before us. We have then for determination the question whether, taking into consideration all the circumstances of the case as shown, the correctness of the location of the highway

as used can be made the subject of dispute at this time, and whether a removal to accord with the lines as now fixed by the surveyor can be insisted upon.

It should be borne in mind that we have as an initial proposition of fact that the highway in question was originally laid out and ordered established as the result of legal proceedings under the statute. It does not appear, however, that any survey was made or monuments placed, fixing the exact boundary lines thereof. The immediate parties then in interest did not see fit to have a survey made or lines run, but, apparently agreed as between themselves upon the location of the road, and proceeded to fence and improve accordingly. To sustain the decree of the court below, the appellee cites and relies upon the case of *State v. Crow*, 30 Iowa, 258, in which it is held generally that where it appears that the claim of the public, and the consent of the landowners abutting upon a highway, have relation to a fixed and definite survey line, proof of a mere mistake as to the exact location, followed by the occupancy and use of a line slightly variant from the true one, will not operate to bar an enforced correction, even if such use be continued uninterruptedly and without question for a period longer than that prescribed by the statute of limitations. The following cases, in which the doctrine of the *Crow Case* is approved and followed, are also cited: *State v. Welpton*, 34 Iowa, 144; *State v. Gould*, 40 Iowa, 372; *State v. Schilb*, 47 Iowa, 611; *Bolton v. McShane*, 79 Iowa, 26.

We think, however, that the cases thus relied upon do not announce the principle by which we must be governed in the determination of this case. In each of such cases it is to be observed that the contention was between the public, or an officer thereof, and an adjoining landowner. Here we have a controversy between the respective owners of the adjoining lands, and such only. As to them, therefore, the question comes down to one of boundary

lines, simply. We can see no difference in principle between a case where a highway serves to mark the division line between the holdings of abutting landowners, and one where a section line, or any other basis, is adopted. It follows that where parties have agreed, either expressly, or by long acquiescence, that the lines of a highway, as actually laid out, or as determined upon and marked out by them, shall constitute the boundary lines between their respective holdings, the case stands as though a hedge fence or other monument should be agreed upon as marking the true line. It is undoubtedly the law of this state that, "in the absence of other controlling circumstances, the inference is conclusive that the division line between adjoining tracts, definitely marked by the erection and maintenance of a fence or other monuments, recognized by the owners as such, and up to which they have occupied and cultivated the land on either side more than ten years, —the statutory period of limitations,—is the true boundary between them." *Miller v. Mills County,* 111 Iowa, 654. The opinion in that case, by Ladd, J., will be found to be an exhaustive review of the whole subject, and the authorities bearing upon it, and the doctrine announced therein has been approved and followed in several later cases. *Axmear v. Richards,* 112 Iowa, 657; *Kulas v. McHugh,* 114 Iowa, 188; *Palmer v. Clark,* 114 Iowa, 558; *Klinkner v. Schmidt,* 114 Iowa, 695.

As we think, the rule has especial application to this case. Here the adjoining landowners, as we have seen, fixed the boundaries of the highway separating their respective farms. It may be that an error occurred in determining the precise location of the section line, but certainly all parties were satisfied with the location as made. Each proceeded to improve his respective property in conformity therewith, putting up buildings, planting orchards, and the like, in full faith that their occupation would not be subsequently disturbed. Surely equity will

not tolerate a disturbance of such conditions after an acquiescence of over a quarter of a century. It may be said that, although the public is in no direct sense a party, yet its interests must not be lost sight of. This may be readily answered by saying that no interest of the public is at stake, so far as to call for a decree that would work an injustice between the immediate parties to this action. Conceding, however, that, as an original proposition, the public had the right to demand that the road should be located on the correct line as ordered, still there is no reason why the principle of the *Mills County Case* should not be applicable, and the public bound in a case presenting the facts we have before us. Such, in effect, is our holding in *Axmear v. Richards.*

It follows that the decree must be reversed. The case is remanded for a decree in harmony with this opinion, or the plaintiffs, at their election, may have a decree, in this court.—REVERSED.