LEO N. BRANDT, APPELLEE, V. OSCAR OLSON, APPELLANT.*

FILED JULY 12, 1907. No. 14,943.

1. **Highways:** DEDICATION: EVIDENCE. To prove an implied dedication of a road to the public as a highway and the acceptance thereof by the public, it is not necessary to prove that the public

---

* Rehearing allowed. See opinion, p. 617, *post.*

authorities have improved or repaired the road, where the evidence showed that it required no improving or repairing to fit it for public travel.

2. ———: ———: PRESUMPTIONS. Evidence of ten years' use by the public of a road through cultivated land without substantial variance, with the knowledge and acquiescence of the owner for a period of ten years, raises the presumption of an implied dedication and acceptance of such road as a public highway.

APPEAL from the district court for Harlan county: ED L. ADAMS, JUDGE. *Affirmed in part and reversed in part with directions.*

*C. M. Miller, W. S. Morlan* and *Gomer Thomas,* for appellant.

*John Everson, contra.*

EPPERSON, C.

Plaintiff owns the southeast quarter of the southeast quarter and the west half of the southeast quarter of section 2, town 19, range 6 west, in Harlan county, Nebraska. Defendant, a road overseer, believing that a highway existed along the section line south of plaintiff's land, and also that another road running north and south had been established close to the west line of said southeast quarter of the southeast quarter, removed plaintiff's fence posts obstructing the alleged highways, and plaintiff brought this action to enjoin defendant and his successors from interfering with plaintiff's use thereof. The district court found for defendant as to the section line or east and west road, but enjoined defendant as to the north and south road extending through plaintiff's forty. Both parties appeal.

1. We have carefully read the record, and are convinced that the learned trial court reached the only conclusion warranted by the evidence as to the section line or east and west road. It is unnecessary to set out the evidence or the substance of it. We think the judgment on plaintiff's appeal should be affirmed.

2. Defendant complains of the decree enjoining him from removing obstructions on the north and south road. The evidence shows that in 1885, and prior thereto, the public had traveled through the southeast quarter of said section 2 in a northeasterly and southwesterly direction, entering the southeast quarter of the southeast quarter at a point near the southwest corner thereof, and leaving the forty about 200 yards east of the northwest corner. At that time the land was wild, unbroken prairie. In 1885 or 1886 the owner thereof broke out the prairie and prepared to farm part of the forty, and caused the travel to turn to the west on the west side of the broken field to a point where the road is now located. On the west of the road the land remained open prairie until about 1893. Under the decisions of this court, we consider that up to the time of the improvement of the land on both sides of the traveled road there was no adverse user, and that the actual use thereof by the public with the consent of the owner was not evidence of an intention on the part of the owner to dedicate the particular strip of land in contro-versy to the public as a highway. *Bleck v. Keller*, 73 Neb. 826; *Engle v. Hunt*, 50 Neb. 358.

It is fairly well established that at least as early as 1893 the land on the west side, except about 10 rods at the south end thereof, was improved by the owner, who plowed and cultivated up to the alleged highway. The evidence of many witnesses, including some called by plaintiff, clearly establishes the fact that plaintiff's grant-ors recognized said road as a public highway for more than 10 years by cultivating the land on either side, except the 10 rods hereinafter referred to, and by leaving for public travel the strip in controversy, and that during the entire period of time the public accepted and used it as such, with full knowledge and acquiescence of the plaintiff and his grantors, until about the time this suit was instituted in 1905.

At the south end, where the north and south road enters upon the highway between sections 2 and 11, the travel

has encroached for about 10 rods upon the other lands of the plaintiff. It seems that in turning the corner, as is often the case, the travel would turn before the intersection was reached. When the travel coming from the north reached a point about 10 rods north of the intersection with the east and west road, some of the travel would turn to the southwest and enter the section line a few rods west of the corner, and some would turn to the southeast and enter the section line road a few rods east of the corner, thus making a Y shape appearance in the traveled paths. In the present case, nothing prevented the travel from thus cutting short the corner until 1901, when it was stopped and thereafter confined to the narrow strip in controversy throughout its entire length, intersecting the east and west road at right angles. Apparently the most serious question here is to determine whether or not the diverging from the narrow strip at the corner will prevent the acquisition of the entire strip or any portion of it.

There would be no difficulty in arriving at the conclusion that a right to use the road as a public highway had been acquired by implied dedication, were it not for the divergence of the travel at the point where the road intersects the section line. Apparently the trial court granted the injunction because of such divergence. The south end of the road in controversy was never closed. Some of the traveling public used it all the time, and all since 1901, when the owner of the land confined the travel to the straight line. It is true the cut-offs at the corner were abandoned in 1901, but it does not appear that the travel straight to the corner or section line was ever discontinued or interfered with. In *Rube v. Sullivan*, 23 Neb. 779, it is said: "Ten years' uninterrupted use will create the presumption, but a much shorter period will be sufficient where the act of the owner from which the dedication is inferred is clear and unequivocal, and accompanied or immediately followed by public use. * * * But, unless there is some clear and unequivocal manifes-

tation of an intention to dedicate, there will be no presumption of dedication until after the lapse of 10 years." See, also, *Rathman v. Norenburg*, 21 Neb. 467; *Shaffer v. Stull*, 32 Neb. 94; *City of Omaha v. Hawver*, 49 Neb. 1; *Engle v. Hunt*, 50 Neb. 358. Witness Smith, who owned the land from 1892 to 1901, testified that he broke out and cultivated the land on the west side of the road, leaving the strip in controversy for the sole use of the public, intending that it should be used as a highway. His successors in title (except plaintiff) never changed its use. The diversion of the travel at the south end of the road was not a substantial variance which would defeat the presumption that the owners of the fee dedicated the land to the public.

The public authorities never improved or repaired the road, but did work that part of the highways connected with this road. The road north of this, which was improved by the public officers, was without value, except when used in connection with the road in controversy. Moreover, the evidence shows that the road needed no improvement. Undoubtedly the improvement or repair by the officers of a road claimed to have been dedicated to the public would be strong evidence tending to show an acceptance, but, where no improvement is necessary, the absence of such evidence will not defeat the presumption of a dedication, which arises from the fact that the public have used the road for a period of 10 years. From 1893, plaintiff's land ceased to be wild uncultivated prairie, and the owners, by their conduct in leaving the road between their improved fields, dedicated it to the public, and the public have accepted the same by using it for more than 10 years.

We therefore recommend that the judgment of the district court be affirmed on plaintiff's appeal, and reversed on defendant's appeal, and the cause remanded, with directions to dissolve the injunction restraining defendant and others from using the north and south road intersecting the east and west road at right angles.

DUFFIE and GOOD, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court on plaintiff's appeal is affirmed, and reversed on defendant's appeal, and the cause remanded, with directions to dissolve the injunction restraining defendant and others from using the north and south road intersecting the east and west or section line road at right angles.

JUDGMENT ACCORDINGLY.

The following opinion on rehearing was filed January 8, 1908. *Former judgment adhered to:*

**Highways: PRESCRIPTION.** Where a highway is established presumably upon a section line, and used for ten years or more by the public without objection made by an adjoining landowner, and thereafter it becomes known that the road is in fact partly upon his land and away from the section line, *held* that the right of the landowner to recover the strip of his land thus used is barred by prescription.

EPPERSON, C.

In our former opinion we did not discuss at length the question involved pertaining to the east and west road. For more than 10 years the public have used a road running east and west at or near the south line of plaintiff's property, the south half of the southeast quarter of section 2. It is contended by plaintiff that this road is not upon the section line, but that a part of it is wholly within his land; that at the southeast corner of his land the road is on the line, but that it bears off to the north, so that at the west side of plaintiff's farm it is about four rods north of the line. Plaintiff concedes that the public is entitled to a road on the line. Consistent with his present contention, plaintiff set fence posts within the strip now used as a highway along what he contends should be the south line thereof. He brings this action to restrain the defendant road overseer from removing the posts. A survey was made by the county surveyor, who gave testimony sup-

porting plaintiff's contention that the road now used bears off from the section line to the north. The correctness of the method used by the surveyor is challenged, but, as we view the case, no occasion exists to discuss this question, and we adopt the survey as establishing the facts relied upon by plaintiff. The question is whether or not the strip of land actually used is a public highway. In other words, does the use thereof for 10 or more years by the public, under the mistaken belief that the road is upon the section line, establish it as a highway?

Plaintiff cites *Bolton v. McShane,* 44 N. W. 211 (79 Ia. 26), wherein it was held: "No length of use by the public of a highway which is supposed to be upon a certain line, but which, by mistake, is not, can give any claim to the highway under the statute of limitations, except as to the true line." The reason for this holding is expressed in the opinion of the court as follows: "It appears, beyond question, that the track traveled, and which is outside of appellant's fence, has been used for public travel for more than twenty years. It is evident that all parties supposed the traveled road to be along the section line. This court has repeatedly held that, in case of mistake of landowners as to the division line in their lands, the possessor holding the lands as a part of his tract, and believing it to be within his boundaries, is not protected by statute. *Grube v. Wells,* 34 Ia. 148. In *State v. Welpton,* 34 Ia. 144, it was held that 'this rule is applicable to the case of the public using a way supposed to be on a certain line, but which, through mistake, is not really upon it. The claim of the public is confined to the true line. The use, in order to draw the benefit of the statute, must correspond with the claim of right.' "  (79 Ia. 26.)

This court has reached a different conclusion in its adjudication of the analogous question which controlled the decision in *Bolton v. McShane, supra.* See *Baty v. Elrod,* 66 Neb. 735, and cases there cited. In the *Baty* case, this court expressly disapproved *Grube v. Wells,* 34 Ia. 148, relied upon to support *Bolton v. McShane. Manrose v.*

*Parker,* 90 Ill. 581, seems to support plaintiff's contention, but we find that *Landers v. Town of Whitefield,* 154 Ill. 630, holds that, under circumstances similar to those in the case before us, the landowner was barred by prescription from fencing in the strip actually used for a road. See, also, *Axmear v. Richards,* 112 Ia. 657; *Meyer v. Town of Petersburg,* 99 Minn. 450; *Buch & Peiffer v. Flanders,* 119 Ia. 164. It is a well-established rule of this court that, as between individuals, possession may be adverse, though.the claimant occupies under a mistaken belief that the true boundary is different than it really is. This rule is applicable to questions of disputed boundaries of public highways, and the defendant had the right to remove the fence posts which plaintiff placed in this highway.

We have also reexamined the case.with reference to the north and south road. It is contended that we were in error in stating in the former opinion "that at least as early as 1893 the land on the west side, except about 10 rods at the south end thereof, was improved by the owner, who plowed and cultivated up to the alleged highway." The witness Smith, who owned the farm in 1893, testified: "Q. Commencing on the south line of section 2, at the road, east of that house, what cultivation was there east of the road when you went there? A. There were 20 acres cultivated there, lying on the east side of the road. Q. Then you owned the land both east and west of the road, up 80 rods? A. Eighty rods, yes, north. Q. How long, to your knowledge, was the strip of uncultivated land left between those two forties, and used as a road? A. The land was cultivated when I went there on each side of that road. Q. How long, to your knowledge, was the strip of uncultivated land left between those two forty acres, and used as a road? A. I don't know. Of course as to that I know it was used before I came there. Q. How long do you know of it not being used? A. Being used as a road? Q. Yes, how long do you know of it? A. Ever since 1893. Q. For what purpose did you leave that strip you have

been talking of as a road uncultivated? A. From the fact of it being established from self-establishment, as I supposed, on account of being traveled and left there previous years. Q. For what purpose did you leave it? A. For the purpose of a road. Q. What improvements or fences were there along the road on the west side? A. It was broke up when I got there. Q. It was broken up west of the road when you got it? A. Yes, sir. Q. Now, across what is known as the road, what improvements, if any, were across that, on what is known as the road? A. What do you have reference to? Q. I have reference to what is known as the road. A. There wasn't any improvements across the road. There was land cultivated across each side. Q. In what was known as the road, it wasn't cultivated? A. No, the road wasn't cultivated up. Q. How wide was the strip that was left uncultivated between the strips east and west of it? A. Oh, probably a rod and a half or two rods. The plowing came up to the road on either side." Other witnesses gave testimony of a similar import, and the record fully justifies the statement in the former opinion "that plaintiff's grantors recognized said road as a public highway for more than ten years by cultivating the land on either side."

We recommend that the former opinion be adhered to.

DUFFIE and GOOD, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the former opinion is adhered to.

FORMER JUDGMENT AFFIRMED.